Samuel C. Coleman, J.
This a proceeding by a group of park department employees, directed to the members of the department of personnel of the City of New York, the city comptroller and its commissioner of parks, which brings into question the validity of the park commissioner’s action in assigning duties to certain other employees in that department and establishing them in positions said to be beyond their civil service status.
The petitioners are supervisors of park operations and their complaint is directed in the main to what they consider to be the privileged status accorded certain other supervisors. They ask to have the commissioner’s practice stopped and his action undone; to have the commissioner directed to remit those who have been preferred to their basic civil service status, and to conduct civil service examinations for promotion to positions now occupied without examination.
The principles that control a proceeding of this kind are clear; the scope of judicial inquiry is defined. Promotion and preferment in the civil service, wherever practicable, should be by competitive examination. A department head has wide scope and discretion in the organization and administration of his department. He may assign specially qualified persons to particular duties, and for convenience give them designations which may seem to be at variance with the particular civil service designations but which are more descriptive of the duties performed. He may not use his broad powers to effect promotions in fact without examinations, to the prejudice of other *755 civil service employees, and it is for the courts to decide whether improper promotions have been effected.
A salary increase alone in an “ ungraded position ” (as are all those in question here, no maximum salary being fixed) need not lead to the conclusion that there has been an improper promotion; a salary increase, coupled with new duties and responsibilities, may require such a conclusion; and even without a substantial salary increase the nature of the new duties by itself may call for condemnation of the particular practice (N. Y. Const., art. V, § 6; Civil Service Law, § 14, subd. 8; § 16; Matter of O’Reilly v. Grumet, 308 N. Y. 351; Matter of Williams v. Morton, 297 N. Y. 328).
With this summary exposition of the legal principles involved and of the scope of the court’s inquiry, I turn to the individual cases.
I have said that petitioners are supervisors. There are 41 in all; they have occupied that position for a number of years. Basically, they are called upon to direct and supervise the operation of a specific facility in a particular park; one may be in charge of a golf course in one park, and another of a baseball diamond elsewhere. Their job is the day-by-day conduct of a given facility; they direct the activities of children and adults who use the park and playground; they supervise employees under them.
Their duties as specified in the last notice of examination for the position (1938) are: “ To plan, organize and supervise the operation of revenue-producing park facilities such as swimming pools, golf courses and other functions for the beneficial uses of the public; assign, instruct and direct personnel in connection with the operation of these facilities; be responsible for the collection, custody and deposit of revenues derived from these facilities; invite and promote a wide and intensive use of these facilities by both children and adults; perform related work.”
The requirements for the position were: “ Two years’ experience in a responsible position having direct charge of park activities and personnel in an established municipal, county or state park system or privately owned public recreational enterprise of a nature to fit the candidate to perform the duties described above, and of a degree of importance not less than that performed by field staff; or the equivalent. A degree from a college of recognized standing in relevant fields will be accepted in lieu of experience.”
The basic salary of a supervisor is $5,750 per annum (a few receive slightly more). The only other civil service position *756 above that of supervisor is park director (I put aside for the moment the position of director of concessions). At one time there were five park directors, one in each borough, appointed after a competitive examination for that position. The duties of each one are such as would fall upon him if each borough were a separate city and the director were the responsible administrative head of the park department in that city. Those duties are comprehensively set forth in the last notice of an examination for the position, in 1935: “ To have responsible charge and supervision in one borough of the City of New York of all maintenance of public parks, parkways and playgrounds and the structures, facilities and concessions therein and their operation for proper public usage and enjoyment; direct the work of Laborers, Gardeners, Foresters, Mechanics, Recreational Supervisors, other technical employees and office staffs, confer with and handle correspondence with responsible City Officials and with the public on matters relating to the maintenance and operation of park areas; and perform related work as required.” (The recreational supervisors referred to are those now called supervisors of park operations.)
Candidates for the post must have degrees in architecture, engineering or landscape architecture; they must have seven years’ experience in the practice of their respective professions, part of it in park work. As will have been observed, there are no such eligibility requirements for supervisor. At present there are two park directors, one in Manhattan and one in Brooklyn. In each of the other three boroughs the responsible head is a supervisor who has been designated borough director and given the duties and responsibilities of the park director. The three are Niebling, McManus and Starr, none of whom has taken an examination for the position of park director. The respondents concede that these three “ are performing the same duties ” as the two park directors.
On its face the action of the park commissioner is without warrant. The respondents, in justification, rely upon the notice for the examination for promotion to supervisor, held in November, 1954. That examination was open to park employees having the status of general park foreman. The duties prescribed for supervisor are given as follows: 11 Duties: Under direction to: Be responsible for the supervision and operation of parks, parkways and playgrounds and the structures, facilities and concessions therein; plan, organize and supervise the operation and maintenance of golf courses and sports stadia for the use of the public; assign, instruct and direct personnel in connection with the operation of these *757 facilities; be responsible for the collection, custody and deposit of revenues derived from these facilities; perform related work. Employees in the title of Supervisor of Park Operations are in some instances assigned duties on the same level as those in the title of Park Director.”
In substance the duties were as originally set forth in 1938. What was added is the final sentence to the effect that employees in the title of supervisor are in some instances assigned duties on the same level as those in the title of park director. This added statement of duties and the scope of employment, the respondents contend, justifies appointment to the position of park director from among supervisors. The petitioners urge that the notice of change in the duties, the addition of the last sentence, that is, has no validity, on the ground that the notice itself was not approved by the State Civil Service Commission (Civil Service Law, § 11). It is unnecessary to decide this, as in no event can the notice have the effect for which the respondents contend. If it meant what the respondents say it does, the distinction between park directors and supervisors is wiped out, and any supervisor, even if his qualifications theretofore had been only those required of a general park foreman, could in the discretion of the park commissioner, be put in charge of a borough or made a park director.
Perhaps it is impossible so to enumerate duties in different civil service positions as to prevent overlapping. It may be that from time to time a supervisor may be called upon to perform some duties normally within the competence of a park director. But however that may be, the notice could not convert supervisors automatically into potential park directors and in effect eliminate as a civil service title the higher office with its greater responsibilities, duties and qualifications. I add that the three supervisors who have been designated borough directors receive salaries far in excess of supervisors. Starr receives $8,000 a year, McManus and Niebling each $9,000. Each of the three has an automobile and chauffeur at his service. These three should be remitted to their strict duties as supervisors. The positions they hold can only be filled as the result of a competitive examination.
Supervisor White has been designated assistant director in the division of maintenance and operation. His office is in the arsenal with the director of that division. The division is charged with the maintenance and operation of all parks, parkways, squares and public places. “ The duties of White,” the respondents state in their brief, “ are highly difficult and responsible in nature in the field of Park Administration.” *758 The brief continues: “He is an Assistant Director of Maintenance and Operation, responsible for the field inspections of all parks and park facilities in the entire city. He correlates memoranda for the rehabilitation projects necessary for inclusion in the Capital and Expense Budgets, and also information necessary for the in-service promotion training program for various titles. Furthermore, he co-ordinates the work projects of the Borough Directors for the Director of Maintenance and Operation on a City-wide basis.”
Here again the respondents rely entirely upon the language of the notice for the promotion examination from general park foreman to supervisor: “ White, as a Supervisor of Park Operations, may be assigned to duties on the same level as a Park Director ”. What I have said with respect to the three persons designated as borough directors applies even more aptly to White. His position is indeed superior to those three, and his salary of $10,000 a year confirms that superiority. That salary is greater than the two civil service park directors in Manhattan and Brooklyn. His designation is unwarranted and he, too, should be remitted to the conventional duties of a supervisor.
Boyle is a supervisor designated assistant to the director of the division of maintenance and operations. He is subordinate to White. His duties are enumerated by the respondents as follows: “As Assistant to the Director of Maintenance and Operations he handles the majority of routine matters including correspondence, answers inquiries on departmental functions, policies and other pertinent matters. He maintains schedule of major items of repair and rehabilitation and coordinates said schedule with the Director of Design. He also assembles data and prepares reports on personnel, accidents, traffic, and attendance records, equipment, budget requirements and numerous other matters pertaining to City-wide maintenance of parks. In addition, he acts as Department representative in the Director’s absence when matters involving maintenance are concerned.” Again the respondents’ reliance on the 1954' notice of examination for supervisor is unavailing. For Boyle’s work as assistant to White in the executive offices of the park department takes him out of the line qf duty and puts him in a preferred position of greater responsibility and added prestige. His salary is $7,100 a year. His designation is improper; as with White, he should be remitted to the conventional duties of supervisor.
Brady is a supervisor denominated director of golf courses. In that capacity he is in charge of golf courses throughout the *759 city, and in that respect he is superior to the supervisors, who actually direct the various courses. He is also in charge of the wild life sanctuary in Jamaica Bay and a nursery in The Bronx. Part of his work in the development of top soil is, of course, an integral part of his duties of the care and maintenance of golf courses. His duties and responsibilities as he detailed them, in my opinion, are entirely different from the basic work of a supervisor, and the difference in salary of $1,000 a year reflects this difference. He, too, has a car at his disposal. The respondents rely on the phrase in the notice of examination “ perform related work,” but this is slight support for taking Boyle outside the field of his conventional civil service duties. “ Belated work ” must mean work related to the specifically-enumerated duties of a supervisor.
Grilligan, a supervisor, is director of mechanical equipment, with offices at Ellis Island. His duties, according to the respondents’ brief, are as follows: “ He is responsible for the servicing, repair and replacement of all the motorized equipment of the department. In addition, he operates a mill and iron shop that produces structural and playground appurtenances required for the necessary park maintenance operation. * * * He has responsibility for the maintenance and repair and technical supervision of the operation of mechanical equipment, as it pertains to filtration and refrigeration in the swimming pools and in the ice skating rinks in the department, and also has responsibility for the maintenance and repair of the various statues and monuments in the parks.”
Grilligan’s direct superior is the director of the division of maintenance and operation. He is in no way responsible to an assistant borough director or to a borough director, that is to say, even to a park director. His salary is $8,250 and he has the use of a city-owned automobile. What he is doing is not 1 ‘ related work” of a supervisor, the only ground upon which the respondents rely to justify his designation and increased duties. He has been taken from the ranks of supervisors and transferred to a position of greater responsibility with increased salary and prestige. His assignment is in effect a promotion.
I go now to a group of supervisors who have been designated assistant borough directors and who appear as such on two organization charts of the department. As to them, the respondents say: ‘ ‘ These persons act as Assistant Borough Directors, performing administrative and inspectional duties of a difficult and responsible nature in the field of Park Administration. They also perform related work as required under direction.” They *760 have been relieved of the day-by-day operation of a given facility, and have been given supervision of a number of supervisors and the facilities of those supervisors. One of them testified that the average supervisor has a working personnel of about 30, that he, as assistant borough director supervises the activities of 150 employees, including a number of supervisors. Each one of them has the use of a city-owned car with a chauffeur supplied. As the matter was summed up by the director of maintenance and operation of the park department, “ The assistant borough directors have been specifically charged with the responsibility for the operation of a section of a borough and report directly to the Director, take orders from him. Now, that would be on all phases of it, maintenance operation.”
It seems to me that the position of the petitioners with respect to these assistant borough directors is well taken, that these men have been taken from their own ranks, so to speak, and put in a position of authority over them. Each one receives a salary which is at least $1,000 a year more than the supervisors,— some $1,200 more. Only two received the same salaries as supervisors, but they were only recently appointed to the status of supervisor and immediately put in authority over others in the- same class. Quite apart from the salary difference, there are the additional factors of prestige, responsibility and authority, with the satisfaction that comes with these. Moreover, by virtue of their position, they have been put in a preferred position where their experience would entitle them to greater consideration if they should apply for promotion through examination. The supervisors in this group who have been improperly assigned to their enlarged duties are: Harris, Linden, Boche, Weaker, Havelty, Specht, Mozzarella, Borice, Bragaw, Kenny, Winton and Jaeger.
I turn to another classification. Tooley is a clerk, grade 5. On the organization chart of the park department for 1955 he appears as “ Director of Concessions ”. On a similar chart of'November 1, 1955, he is designated as “ Administrator of Concessions ”. There is a civil service title, of “ Director of Concessions ” and for many years that position has been held by a Mrs. Storer. Whether Tooley is called director or administrator is immaterial. Tooley directs the concessions division of the park department, and Mrs. Storer has been placed in a position subordinate to him. “I am running the department * * * * She doesn’t exactly let me run the office; I do run it.” In their brief the respondents say Tooley’s work “is largely administrative” and that he has charge of the concessions division. Tooley receives a salary of $7,500 a year; *761 Mrs. Storer $5,940. The duties and responsibilities of a clerk, grade 5, are broad, but not broad enough to justify supplanting in his favor a properly appointed director of concessions. If a second director is desirable (there were two directors at one time), the appointment should come through examination and promotion.
McCarthy and Casey are general park foremen who apparently have been designated as assistant borough directors. Essentially they are in charge of repair crews; their work requires them physically to cover greater territory than a supervisor in charge of a given facility, but they are not working “ out of title ”. Their salaries are below that of the average supervisor, as indeed the position is subordinate to that of supervisor. I do not believe the petitioners have any valid complaint with respect to them.
And so with Bunce and Frank. Bunce is not a supervisor, but an engineer, doing engineering work in the right of way division; and as to Frank, whatever his designation, he assists the borough director in matters of engineering, doing substantially what he had been doing in his civil service status. I see no ground for criticism here, a view apparently concurred in by the attorney for the petitioners. Sorace is a civil engineer, and though at one time designated assistant borough director, no longer bears that designation. He continues to do his work of engineering, at no increased salary, and as to him too the attorney for the petitioner would probably agree that there is no room for criticism.
To sum it up, except in the case of a few men whose assignment cannot from a legal standpoint be questioned, it seems to me that what has been done is in effect to create new higher positions without reference to civil service law and regulations, and to fill those positions by promotion without holding proper examinations; and also to promote to a superior civil service position those who have not taken an examination for that position. All of the positions in question can be filled by examination, and they should be so filled. Obviously, in the case of any large department it would be an absurdity to suggest that any given difference in duties or a particular designation for office convenience or for descriptive purposes results in the creation of a different position. But the differences here are great enough to call for the conclusion that the jobs are different in nature.
The corporation counsel asks me to say that the persons whose assignments and designations are being questioned are properly qualified and that only considerations of efficiency and *762 of the public good prompted those assignments. Such considerations are irrelevant when the question is whether the assignments are authorized in law, and in any case, as I stated upon the trial, it would be an intrusion on my part even to consider the suggestion. The only question before me is whether the assignments were warranted in law, and my conclusions relate to nothing else.
Settle order.