Abraham 1ST. Geller, J.
The question for determination in these two proceedings tried jointly is whether the reclassification under the Career and Salary Plan of petitioners —14 Supervisors of Park Operations — to the position of Assistant Park Directors represented in effect an attempted validation of prior invalid ‘‘ out-of-title ’ ’ work.
The Board of Estimate and the city agencies which administer the plan and set up the reclassification as part of a city-wide project affecting 125,000 positions, although named respondents, do not oppose, but, even in the face of a long litigation history to seemingly contrary effect hereinafter analyzed, rather support petitioners’ claim of right to be retained in their positions of Assistant Park Directors. All of the petitioners have for years been performing more responsible work and receiving higher salaries and benefits than the remaining 31 Supervisors of Park Operations, merely by virtue of assignment from the Park Commissioner.
Since Supervisor of Park Operations was an ungraded position with no salary ceiling, salary differentials based on different duties and responsibilities are unobjectionable. The sole issue is out-of-title work.
The opposition comes from the intervenors-respondents, a group of 18 Supervisors of Park Operations, none of whom obtained the superior reclassified position of Assistant Park Director. It was the intervenors-respondents who, as petitioners, had instituted in 1955, just prior to the effective commencement date of the reclassification, and had carried to a successful conclusion in the Court of Appeals in 1960, a proceeding directing the Park Commissioner, the city and its agencies forthwith to discontinue the assignment of each of the individuals, naming them, comprising the present petitioners in these two proceedings, to perform duties held by the courts to be beyond the duties and responsibilities attaching to their civil service title of Supervisor of Park Operations.
*922 Petitioners, as well as the respondent city agencies, contend in these present proceedings that the prior proceeding of intervenors-respondents, having been based' upon a prereclassification showing and standard, is riot controlling arid 'determinative with respect to the reclassification thereafter effectuated pursuant to the Career and Salary Plan.
The basic principle underlying a reclassification of civil service employees is clear.' It may conform positions, particularly in the higher or unlimited grades, to the actual assignments of duties being performed by particular incumbents and simply provide for the establishment of more precise new titles, new job descriptions, and adjustments in salary. Such a reclassification is not subject to criticism, provided it does not embrace an attempted validation of an existing invalid practice.
The applicable rule of limitation upon reclassifications under the Career and Salary Plan was set forth in Matter of Mandle v. Brown (4 A D 2d 283, 286, affd. 5 N Y 2d 51): “ If ; out-of-title ’ work was invalidly imposed upon or assumed by the incumbents prior to the reclassification, it may not be validated by a reclassification which is based thereon. * * * Indeed, the New York City Civil Service Commission recognized this principle, for in the very Career and Salary Plan which it adopted, and under which the instant reclassification was made, it provided that ‘ out-of-title ’ work be disregarded (Resolution of the Career and Salary Plan, § IV, adopted Aug. 19, 1954).”
Section IV of the commission’s implementing resolution provided for reclassification “ on the basis of the duties, responsibilities and examination qualifications naturally and properly pertaining to the present title of such positions or class of positions, without regard to out-of-title worh performed by any incumbent thereof.” (Emphasis supplied.) In Handle, involving a reclassification of Grade 4 attorneys into four separate titles, the court stated (4 A D 2d 283, 288) that the reclassification could be supported by evidence that such differential work was actually being done by the incumbents prior to reclassification, but explicitly pointed out: ‘ ‘ In addition, it must appear that such supervisory work, which was done prior to reclassification, was within the titles and job descriptions provided for old Grade 4.”
It is apparent, then, that with respect to out-of-title work the Career and Salary Plan established no different standard from that Avhich our courts have always sought to apply in order to carry out the mandate of the Constitution (art. V, § 6) and the Civil Service Law (§§ 44, 61) that positions and pro *923 motions in the competitive civil service should be filled by competitive examinations.
Keeping this basic principle in mind, we turn, to a review and analysis of the long and tortuous litigation background to the instant proceedings.
In May, 1955, after the Board of Estimate had approved the Career and Salary Plan authorized by the State Legislature, and just prior to its establishment, these intervenors-respondents commenced their proceeding (Matter of Carolan v. Schechter, 5 Misc 2d 753, affd. 8 A D 2d 804, affd. 7 N Y 2d 980) for an order directing the Park Commissioner and the appropriate city agencies to discontinue the assignment of the petitioners herein to perform out-of-title duties of higher positions, for which no competitive promotion examinations had been provided.
During the pendency of that proceeding, all of the Supervisors of Park Operations were reclassified, effective January 1, 1956. As the result of a survey, management prepared new specifications of job descriptions and new titles, conforming to the actual duties being performed by the Supervisors, and a table of equivalencies, showing the existing title and the various new reclassified titles to be assigned without further examination to the respective incumbents. The new specifications and table of equivalencies broke down the title of Supervisor of Park Operations into six reclassified titles, thus accepting and validating without question all of the exceptional work being performed by the 14 petitioners. Three of them were performing the duties of Park Directors in charge of entire boroughs, two were performing responsible executive work in the Division of Maintenance and Operations, and nine were working as Assistant Borough Directors in charge of large sections of a borough. The six new reclassified titles assignable without examination were: Supervisor, Senior Supervisor, Assistant Park Director, Park Director, Assistant Director of Park Maintenance and Operations, and Supervisor of Park Concessions (the last-named not here involved).
All. positions in the competitive class in the Park Department were also grouped according to the general category in which they were deemed to fit. Thus, the “ Park Supervisory Occupational Group ” listed, in order of ranking, Park Foreman, General Park Foreman; Supervisor-.of Park Operations and Senior Supervisor of Park Operations; while, in an entirely different category, the “Park Administrative Occupational Group,” appeared the titles of Assistant Park Director, Park Director, and Assistant Director of Park Maintenance and Operations.
*924 The six proposed reclassified titles for Supervisors of Park Operations did not meet with the full approval, as required, of the State Civil Service Commission. It pointed out that Park Director was already an established civil service title requiring a competitive examination (although none had been held for about 20 years) and that the position of Assistant Director of Park Maintenance and Operations was even higher in rank. It requested that these two titles be deleted from the table of reclassified titles assignable without examination to Supervisors of Park Operations. The table was so amended.
Thereafter the 45 Supervisors of Park Operations filled out questionnaires and desk audits were conducted. Although these showed that 3 of the petitioners were actually performing the duties of Park Directors and 2 those of Assistant Directors' of Park Maintenance and Operations, because of the amendment they were also reclassified, together with the remaining 9 of the petitioners who were doing such work, as Assistant Park Directors. All but one (who was reclassified as Supervisor of Park Operations) of the intervenors-respondents were reclassified as Senior Supervisors of Park Operations.
Shortly after this reclassification, the intervenors-respondents commenced in Albany County a proceeding (Matter of Carolan v. Falk) to enjoin the reclassification without competitive examination of petitioners as Assistant Park Directors. That court held in August, 1956 that the trial of the issues as to whether the questioned reclassifications constituted promotions and whether competitive examinations were practicable should await the final disposition of the first Carolcm proceeding, thus indicating its view that the issues arising from reclassification were identical with those to be decided in Matter of Carolan v. Schechter.
In February, 1957, after an extended trial in Matter of Carolan v. Schechter, the court determined (5 Misc 2d 753) that each of the present petitioners had been and was performing out-of-title work. In a careful and well-reasoned opinion, Judge Coleman drew a distinction between variances in work assignment which fell within the discretionary scope of management and out-of-title assignments prejudicial to the promotional goals of civil service employees — the same standard as that underlying the Career and Salary Plan. Holding that it was for the courts to decide whether improper practices had been effected, he decided that each of the petitioners was actually doing work entirely different in nature from the basic work of a Supervisor of Park Operations, noting that, in addition, those acting as Assistant Park Directors had been placed in a position of authority over *925 their fellow Supervisors. The final order directed the Park Commissioner and the city agencies “ forthwith ” to discontinue assigning the individuals, naming each of them, who comprise the petitioners herein, to perform the duties of Park Director, Assistant Director in the Division of Maintenance and Operations, or Assistant Park Director.
The Appellate Division unanimously affirmed that order in 1959 (8 A D 2d 804), long after its decision in Mandle v. Brown (4 App. Div. 283, supra) in a Per Curiam opinion stating: “ The evidence reveals an integrated pattern of assigning, without regard to appropriate Civil Service Law and regulations, a considerable number of persons holding the title of Supervisor of Park Operations and two others [not here involved] to the performance of duties clearly beyond the scope of the duties and responsibilities attaching to their respective civil service titles.”
And finally, the Court of Appeals in 1960 unanimously affirmed without opinion the Carolan order (7 N Y 2d 980). This constituted a final determination that all of the petitioners were doing out-of-title work.
Petitioners thereupon instituted the present proceedings and obtained a stay during the pendency thereof enjoining the respondents Park Commissioner and city agencies from taking any steps which would affect their status under their classification of Assistant Park Directors.
Petitioners — and respondents, also — take the position that Matter of Carolan v. Schechter is not binding, because it was instituted prior to the reclassification and was allegedly decided on a preclassification showing and standard claimed to be different from that to be applied under the Career and Salary Plan. Petitioners presented testimony as to the procedure followed in the reclassification and put in evidence the various documents required for that purpose, including the position classification questionnaires filled out by them. It is interesting to note that their own description and estimate of their duties and responsibilities reveal even more clearly than the findings in Matter of Carolan v. Schechter the unquestionable out-of-title nature of their work.
This court has concluded that the petition should be dismissed on the merits, with costs. Its decision rests on three grounds.
First, a practical consideration. The order in Matter of Carolan v. Schechter contained a mandatory direction to the city agencies to discontinue “ forthwith ” the specific assignments of these persons who are the instant petitioners. When the Appellate Division and Court of Appeals affirmed that order, the Career *926 and Salary Plan had long since been established and these very reclassifications accomplished. Surely, if there were any question as to whether the subject assignments could be sustained on the basis of the 1956 reclassification, as now urged, the Court of Appeals would not have in 1960 affirmed a mandatory order for forthwith discontinuance; but would have modified it to indicate that, while correct according to its facts, enforcement would have to await determination of a proceeding testing the effect of the Career and Salary Plan reclassification. The strongly worded affirmance in 1959 of the Appellate Division and the unconditional affirmance in 1960 by the Court of Appeals conclusively indicate that there could be no different result under the Career and Salary Plan, and that the directed discontinuance of petitioners’ assignments was intended to apply also to their then reclassified positions as Assistant Park Directors.
Secondly, since there has been no showing on the present trial of facts with respect to the duties and responsibilities of petitioners at the time of their reclassification different from those found in Matter of Carolan v. Schechter, the final order rendered therein is binding in these proceedings with respect to the issue of out-of-title work being performed by these petitioners, being litigated and adjudicated in that proceeding.
Had petitioners been parties to the Carolan proceeding, instead of merely filing a brief as amicus curiae, res judicata would have been invocable against them. However, the doctrine of collateral estoppel — which is basically a rule of justice and fairness that a case once tried should not be relitigated — has been constantly expanded in modern times to include within its scope those who were not technically parties or privies to the prior suit (see Israel v. Wood Dolson Co., 1 N Y 2d 116; “ Collateral Estoppel — Effects of Prior Litigation,” 39 Iowa L. Bev. 217; “ Developments in the Law — Bes Judicata,” 65 Harv. L. Bev. 818, 861-862). The Eestatement of Judgments (§ 85) advances the principle that a person, whose real interests are represented by a party to an action, is bound by and entitled to the benefits of res judicata.
Section 111 of Eestatement of Judgments, provides that although res judicata is not applicable, the rendition of a judgment may be an operative fact in a subsequent action between one of-the parties and third persons, if the judgment is a circumstance upon which their rights depend because of their relation to each other. Once it appeared in the instant proceedings brought by petitioners that the facts as to their ■ duties and • responsibilities were in no respect different from those found in *927 Gar oían and that the rule as to out-of-title work was not changed by the Career and Salary Plan, petitioners then having had their day in court, the prior final order rendered on the merits became an operative. fact which was binding in. these proceedings. A determination by this court to contrary effect would, in view of the identity of the issue, be fundamentally inconsistent with the prior determination and could not stand.
Finally, independently of these considerations, the court finds that despite lip service concerning disregard of out-of-title work in making the reclassification, the evidence is obviously to the contrary. The reclassification first adopted attempted to include even Park Director and Assistant Director of Park Maintenance and Operations as reclassified civil service titles conferable upon Supervisors of Park Operations without further examination. Instead of ignoring out-of-title work, as concededly required, the reclassifiers actually would have taken into consideration every single item of out-of-title work done by these petitioners.
But even the less extreme title of Assistant Park Director given to all of them on reclassification embraces broad duties of a scope and nature beyond those attaching to the civil service title of Supervisor of Park Operations. The clearest evidence of this is the reclassifiers’ own division of groups of positions in the Park Department into separate categories. Supervisor of Park Operations and Senior Supervisor of Park Operations are placed in the “ supervisory ” category, while Assistant Park Director is in the “ administrative ” category. The line of demarcation was thus most strongly drawn. There can be no question as to administrative work being out-of-title work for a mere supervisor of a park facility. The elaborate and detailed description of their duties by petitioners in the questionnaires completely confirms this conclusion. Incidentally, it may be observed that the new added title of Senior Supervisor of Park Operations embraces duties which do fall within the permissible pattern of a reclassification.
The petitions are dismissed on the merits, with costs to intervenors-respondents. Proceeding abated as to petitioner Edward P. Brady. The stay is vacated. Settle orders accordingly.
Although it is not within the issues, the court feels impelled to remark that there appears to be no reason why examinations for these higher titles, so long delayed, should not be promptly scheduled.