NEW HAVEN POLICE LOCAL 530 ET AL. *v.*
FRANK LOGUE, MAYOR, CITY OF
NEW HAVEN ET AL.

SPEZIALE, C. J., PETERS, PARSKEY, ARMENTANO and SHEA, Js.

Argued April 6—decision released September 7, 1982

*Alvin M. Murray,* assistant corporation counsel, for the appellants (named defendant et al.).

*Penn Rhodeen,* with whom, on the brief, was *Elaine S. Amendola,* for the appellant (defendant Nicholas Pastore).

*W. Paul Flynn,* with whom, on the brief, was *Frank J. Raccio,* for the appellees (plaintiffs).

PARSKEY, J.  The defendants appeal from a declaratory judgment rendered by the trial court which held void appointments of the defendant police officers to posts created by a reorganization of the New Haven police department effective May 1, 1978.  The plaintiffs, Thomas Muller and Leonard Gallo,[1] hold the ranks of lieutenant and sergeant, respectively, in the department.  The defendants are police officers appointed to posts under the reorganization plan, the chief of police, mayor, and the city officials responsible for filling and financing the jobs in question.  The plaintiffs challenged the authority of the police chief to make the subject appointments without first holding competitive examinations.

The defendant officers held the ranks of captain, lieutenant, or sergeant before the reorganization. The plan eliminated the titles of deputy chief and assistant chief in the organizational hierarchy, created the titles of director, chief duty commander, duty commander, and unit commander, and rearranged the placement of various police functions under the new hierarchy.  After May 1, 1978, the chief vested the defendant officers with the new titles[2] pursuant to the discretionary authority

[1] Two of the original plaintiffs, the police union and a captain in the department, have since withdrawn from the case.

[2] The following list of the defendant police officers contains their respective ranks before May 1, 1978 and titles after the reorganization: (1) Lt. Harold Berg, Chief Duty Commander; (2) Cpt. David L. Burke, Commander of Internal Affairs and Civilian Complaints; (3) Lt. James DeFilippo, Commander of the Training Unit; (4) Cpt. William Farrel, Director of Support Services; (5) Sgt. Charles Grady, Director of Community Affairs; (6) Lt. Arthur Lee, Duty Commander; (7) Sgt. Oddino Montanari, Duty Commander; (8) Lt.

granted solely to him by virtue of section 111 of the New Haven City Charter.[3]  At the same time, pursuant to section 104 of the charter,[4] the chief and the board of police commissioners enacted a rule requiring approval by the board of these and other such appointments in the future.  The board of police commissioners approved the subject appointments on April 30, 1978.  Because these appointments were made without first holding competitive examinations as required by section 198 of the charter[5] and rule VI, section 2, of the civil

John O'Connor, Commander of Patrol Division; (9) Lt. Nicholas Pastore, Director of Operations; (10) Sgt. Louis Ranciato, Commander of Investigative Services; (11) Cpt. William Roche, Director of Administration.  The defendants Paul Guidone and Joseph Kenney, who were not uniformed or investigatory members of the department before May 1, 1978, were appointed to the posts of Director of Planning and Personnel and Commander of Planning Unit, respectively, upon reorganization.  The case is withdrawn as to Sgt. Norman Bell, Jr., Duty Commander.

[3] Section 111 of the New Haven Charter provides in pertinent part: "The chief . . . shall assign to duty all the members of the department, making such changes from time to time as in [his] . . . judgment the efficiency of the department may require."

[4] Section 104 of the New Haven Charter provides in pertinent part: "There shall be in the department of police service a board of police commissioners consisting of six commissioners who shall advise and consult with the chief of police concerning matters pertaining to the chief's duties and to the conduct of the department, and together with the chief shall make all rules and regulations relating to the administration of the department which it may deem necessary or advisable, which rules shall be printed and made  available to the public."

[5] "[New Haven City Charter] Sec. 198. CLASSIFIED AND UNCLASSIFIED SERVICES ESTABLISHED.  The civil service of the city shall be divided into the unclassified and classified service.  The unclassified service shall comprise:  (a) officers elected by the people and persons appointed to fill vacancies in the elective offices;  (b) members of boards and commissions appointed by the mayor;  (c) city assessors;  the city planning director, the librarian, assistant librarians and the superintendents of the different departments of the public library and the director of parks and recreation and the heads of departments appointed by the mayor excepting the director of personnel;  (d) the secretary, superintendents, assistant superintend-

service rules and regulations,[6] the trial court nullified them,[7] ordered the civil service board to hold examinations, and ordered the relevant officials to comply with the applicable rules in filling the positions.[8]

ents, supervisors, directors, principals and teachers employed by the board of education; (e) the secretary and employees to the mayor; (f) the corporation counsel, assistant corporation counsels and any special assistant corporation counsels; (g) persons employed in a professional or scientific capacity to make or conduct a temporary or special inquiry, investigation or examination and special investigators in any department; (h) patient or inmate help in the city, charitable, penal and correctional institutions from the effective date of this charter; (i) foremen, field clerks, mechanics, truck drivers, field men, operators, maintenance men, inspectors who are not presently under civil service and laborers, in the department of public works; (j) supernumerary policemen and substitute firemen who shall, however, be selected by civil service examination and thereafter shall be eligible for appointments to the lowest classified grade in the respective departments. The classified service shall comprise all positions not specifically included by this section in the unclassified service and all appointments and promotions therein shall be made according to merit and fitness to be ascertained so far as practicable by competitive examinations."

[6] "[Civil Service Rules & Regulations, Rule VI] Section 2. TYPES OF APPOINTMENTS

All vacancies in the classified service shall be filled by re-employment, transfer, or from an appropriate promotional or eligible list, if available. When no Civil Service list of eligibles exists for a particular class, the Board of Finance may fill any vacancy in such class by a temporary appointment for not more than ninety (90) working days; and within that period, the Civil Service Board shall hold examinations of candidates for the class.

The Board of Finance, when the interests of the City require, shall have authority to extend a temporary appointment for a period of ninety (90) working days but shall not exercise this power more than once in the case of any given appointee."

[7] Section 192 of the New Haven Charter provides in pertinent part: "Any appointment or removal made in violation of the provisions of this charter shall be null and void."

[8] Because of the potential for disruption of police operations, the trial court declined to order the further relief requested by the plaintiffs that the defendant officers be restrained from exercising their authority. The court ordered the parties to return to court

On appeal, the defendants claim: (1) that the plaintiffs lack standing to maintain the action; (2) that the court erred in finding a charter requirement of merit selection rather than a license for discretionary designation to the subject posts; (3) that the court erred in concluding that the parties conceded that the subject posts were in the classified service; and (4) that the court erred in substituting its judgment for the judgment of the police chief and responsible city agencies. For the reasons set forth below, we affirm the decision of the trial court.

## I

### STANDING

The defendants contend that the plaintiffs, a lieutenant and a sergeant, lack standing in this case because only captains are eligible to compete for appointments to slots created by the reorganization since the posts are functionally superior to the rank of captain under the plaintiffs' theory of the case.

with advice on how to effect a smooth transition. This issue is not relevant to the present appeal.

It is worthy of mention that the judgment of the trial court specifically refers only to the titles of director and duty commander and not to the other two titles of chief duty commander and unit commander involved in this case. We think, however, that the judgment is intended to reach all defendant officers with the same effect because: (1) the trial court having found all issues for the plaintiffs who challenged the appointments of all defendant officers, and not excepting any defendant officer from the judgment, implicitly included each defendant officer in the judgment; see *Muha v. United Oil Co.*, 180 Conn. 720, 722n, 433 A.2d 1009 (1980); (2) in its memorandum of decision the trial court classified all defendant officers as either directors or non-directors, calling the latter group "duty commanders"; see *Schmidt v. Schmidt*, 180 Conn. 184, 188, 429 A.2d 470 (1980); *Czarnecki v. Plastics Liquidating Co.*, 179 Conn. 261, 263, 425 A.2d 1289 (1979); (3) at trial, each side treated all four types of appointments together as either all authorized or all unauthorized under one theory of the applicable law and in this appeal the parties treat the judgment as applicable to all defendant officers. See *Nikitiuk v. Pishtey*, 153 Conn. 545, 549n, 219 A.2d 225 (1966).

"While the declaratory judgment procedure may not be utilized merely to secure advice on the law . . . or to establish abstract principles of law . . . or to secure the construction of a statute if the effect of that construction will not affect a plaintiff's personal rights . . . it may be employed in a justiciable controversy where the interests are adverse, where there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement, and where all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." (Citations omitted.) *Horton* v. *Meskill,* 172 Conn. 615, 627, 376 A.2d 359 (1977); see also General Statutes § 52-29; Practice Book §§ 388-394.

The issue raised in this case is the standard of eligibility for appointment to posts characterized by the plaintiffs as positions which require merit selection and by the defendants as duty assignments which are discretionary designations. The designated titles do not correspond uniquely to a rank. Sergeants, lieutenants, and captains all occupy the posts of director or commander.[9] Nine of the defendants equal in rank to the plaintiffs achieved these offices. The plaintiffs' request for declaratory judgment requires an inquiry into the relevant authority by which such appointments may be made. It is unclear whether, if an equivalency between title and rank were drawn, in fact only captains would be eligible to compete for each title. It is clear that many sergeants and lieutenants were excluded from consideration and the few who were called were chosen. The uncertainty of the plain-

[9] See footnote 2, supra.

tiffs' rights under this system confers upon them standing under Practice Book § 390[10] to challenge the practice.

## II

### CHARTER AUTHORITY

The focus of debate in this case is whether the new posts of the defendant officers constitute appointments or promotions to positions and hence are governed by section 198 of the city charter, or whether they are merely assignments to duty and hence are governed by section 111 of the charter. If the posts are duty assignments as the defendants contend, the chief may designate officers to such duties at his discretion without regard to civil service merit selection regulations. New Haven Charter § 111 (1977). If, however, the posts are positions as the plaintiffs contend, they must be filled according to civil service rules.

---

[10] "[Practice Book] Sec. 390. ——CONDITIONS

The court will not render declaratory judgments upon the complaint of any person:

(a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or

(b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; or

(c) where the court shall be of the opinion that the parties should be left to seek redress by some other form of procedure; or

(d) unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof."

Because our holding above is dispositive of the issue of standing, we do not reach the defendants' claim that the plaintiffs lack standing because of an allegedly defective pursuit of class action status. It is noteworthy that the defendants' claim in this regard presents no problem concerning the identity of those persons affected by the judgment below since the putative class comprises the group defined by Practice Book § 390 (d).

To determine the intent of the charter, "[t]he enactment must be examined in its entirety and its parts reconciled and made operative so far as possible." *McAdams* v. *Barbieri,* 143 Conn. 405, 418, 123 A.2d 182 (1956). "Duty assignment" is nowhere defined in the charter or civil service rules and regulations. "Position" is definition number 17 of the civil service rules and regulations: "A group of duties and responsibilities requiring the full-time employment of one person." New Haven Civil Service Commission Rules and Regulations, p. 6; see General Statutes § 5-196 (u); *State* v. *Griswold,* 73 Conn. 95, 97, 46 A. 829 (1900). It logically follows from the definition of "position" that an assignment to duty constitutes an order to perform a particular task encompassed in the scope of the employee's position.[11] If the order in fact involves a group of tasks different from the duties comprising the officer's current position, the order actually amounts to an appointment to a position and, in some cases, a promotion to a position. Such an order, although nominally a duty assignment, is an appointment or promotion to a position.[12]

---

[11] See, e.g., Rule I of the Civil Service Rules and Regulations, City of New Haven, which provides in pertinent part:

"Section 2. . . . The class title of each specification shall be descriptive of the work to be performed by employees assigned to the class.

"The scope of the work shall indicate the kind of work to be performed, the degree and kind of supervision involved.

"The enumeration of typical tasks shall include items of work which are assigned to employees in that class. . . ."

[12] Although decisions interpreting other municipal charters are not necessarily useful since the charters may contain determinative provisions not present in the charter involved here, reference to the following cases is helpful to illustrate the difference between assignment to a position; see *Williams* v. *Morton,* 297 N.Y. 328, 334, 79 N.E.2d 428 (1948); *Schieffelin* v. *O'Brien,* 243 N.Y. 151, 154–55, 153 N.E. 31 (1926); *Hale* v. *Worstell,* 185 N.Y. 247, 253–54, 77 N.E. 1177 (1906); *Carolan* v. *Schecter,* 5 Misc. 2d 753, 757, 166 N.Y.S.2d 348 (1957); and designation to duty. See *Madden* v.

We think that the attributes of the offices involved in this case render them appointments or promotion to positions rather than assignments to duty. Each title requires the full-time employment of one person. Salary is figured on a regular, annual basis and tied to the title as a whole rather than figured upon an "extra" or "bonus" basis in addition to duties of any underlying position. Further indications that the subject appointments are in the nature of positions are the indefinite tenure of the offices and the letters of appointment which are formal acknowledgments that fundamental changes in status have occurred rather than routine orders to perform tasks given. Although the defendant officers still hold civil service ranks, personnel records showing salary increases and promotions in status refer to them by full-time title instead of rank after a certain point in their progression. We agree with the trial court that, although the defendant officers have retained their civil service ranks when assuming the duties of a new position, the ranks themselves have become meaningless with regard to the opportunity for advancement in the department.

A review of the functions of the posts in issue demonstrates a degree of continuous responsibility and of established authority lacking in a temporary detail. Each of the five directors supervises and administers one of the five divisions which comprise the department: Administration, Community Affairs, Operations, Support Service, and Planning and Personnel. Each director reports directly to the chief and, in turn, supervises the commanders of the division's respective units. Four of the five

*Stockton,* 175 Cal. App. 2d 893, 896, 1 Cal. Rptr. 70 (1959); *Jersey City* v. *Babula,* 56 N.J. Super. 533, 538, 153 A.2d 712 (1959); *Mandle* v. *Brown,* 5 N.Y.2d 51, 63–64, 177 N.Y.S.2d 482 (1958).

unit commanders named as parties work under their respective division directors, supervising and administering one of the units in a division. The fifth commander works directly for the chief on matters of internal affairs and civilian complaints. There is one chief duty commander who supervises and administers the duty commander unit which serves as the inspections unit of the department. He reports directly to the chief. The two duty commanders serve as acting chief during non-business hours. In sum, the evidence clearly supports the conclusion that the posts assigned to the defendant officers constitute positions under the charter. In addition, because the defendant officers' responsibility, authority, and except in two cases, salary, increased with their new titles, the appointments constituted promotions from the positions held before the May 1 reorganization. See 3 McQuillin, Municipal Corporations (3d Ed. Rev.) § 12-131.

The New Haven Charter creates a civil service system in which city employment positions are divided into classified service and unclassified service. New Haven Charter § 198 (1977); *McAdams* v. *Barbieri,* supra, 414; see General Statutes §§ 5-196 (e), 5-196 (z), 5-198; *State ex rel. Levy* v. *Pallotti,* 133 Conn. 334, 342–44, 51 A.2d 136 (1947). Appointments and promotions to positions in the classified service are made according to merit and fitness to be determined as far as practicable by competitive examinations. New Haven Charter § 198 (1977). Section 198 lists the positions comprising the unclassified service. "The classified service shall comprise all positions not specifically included by this section . . . ." Id. The posts held by the defendant officers, not being on the unclassified list, constitute classified positions under the charter.

See *Chotkowski* v. *Connecticut Personnel Appeal Board,* 176 Conn. 1, 5, 404 A.2d 868 (1978). The defendants' claim that the trial court erred in finding that the parties conceded the positions to be classified rather than unclassified is irrelevant to their appeal. The defendants' theory is that the titles are not positions at all but are merely duty assignments. Once it is found that the titles constitute positions, their status as classified or unclassified is determined as a matter of law by reference to section 198 of the charter.

Finally, we do not agree with the defendants' fourth claim of error that the trial court exceeded its allowable scope of judicial review. "[P]rovisions regulating appointments under civil service acts are mandatory and must be complied with strictly." *Walker* v. *Jankura,* 162 Conn. 482, 489, 294 A.2d 536 (1972). While section 111 of the charter affords the chief the discretion to detail officers to duties incident to their positions, it does not provide the authority to appoint such officers to entirely new positions, thus circumventing the civil service provision in the charter. The extent to which the chief has imposed self-restraint in his discretionary authority by requesting that the board of police commissioners oversee his appointments does not change the fact that appointments and promotions to positions in the department are beyond the scope of his discretionary power derived from section 111. The department's long practice of continual deviation from the civil service rules cannot override the mandates of the charter. *Local 1186* v. *Board of Education,* 182 Conn. 93, 105, 438 A.2d 12 (1980).

There is no error.

In this opinion the other judges concurred.