JOSEPH KENNY v. CIVIL SERVICE COMMISSION ET AL.
(12006)

SHEA, DANNEHY, SANTANIELLO, SPADA and O'NEILL, Js.

Argued March 15—decision released August 27, 1985

*Martin S. Echter,* deputy corporation counsel, with whom, on the brief, was *Alvin M. Murray,* assistant corporation counsel, for the appellants-appellees (defendants).

*Anthony J. Lasala,* with whom was *Barbara E. Crowley,* for the appellee-appellant (plaintiff).

SANTANIELLO, J. This is an appeal by the defendants[1] from an adverse trial court judgment awarding the plaintiff, Joseph Kenny, compensatory and exemplary damages for discrimination and wrongful termination of employment. The plaintiff has cross appealed from the trial court's refusal to reinstate him. We find error on the appeal and no error on the cross appeal.

The basic facts underlying this appeal are not in dispute. In 1971, the plaintiff was appointed director of planning and budgeting for the New Haven police

[1] The plaintiff brought suit against the state civil service commissioner, the New Haven board of police commissioners, the New Haven board of aldermen, the New Haven department of police services, and Paul Guidone, a police department employee.

department. The plaintiff had worked for the department at various times, in differing capacities, since 1955. In August, 1972, the plaintiff passed a civil service exam and became certified for the director's position. His responsibilities as director of planning included, among other things, coordination of the various units within the police department, management of the department's information system, and preparation of the department's budget. In his capacity as director of planning, the plaintiff reported solely to the chief of police. In 1978, Police Chief Edward Morrone directed an extensive internal reorganization of the New Haven police department. He structured the department into a cabinet of five directors, each of whom headed one of five newly created units. Planning and evaluation was one of the units created.

The city of New Haven operates on the basis of a civil service system. The city's charter and civil service rules and regulations establish specific, mandatory procedures for the hiring, promotion, or termination of municipal employees. The applicable civil service rules provide that openings in higher positions in the classified service of the city are to be filled, in the first instance, by promotion from lower classes on the basis of competitive tests, and then by administration of competitive exams to any qualified persons. Civil Service Rules and Regulations, Rule X.

Following the reorganization, Morrone, acting in violation of these regulations, filled the new directorships without the administration of competitive exams and without first making the positions available to employees already working in the civil service system. Morrone appointed the defendant Paul Guidone director of the planning unit and reassigned the plaintiff to the subordinate position of commander of planning.[2]

---

[2] The Morrone reorganization was challenged in the Superior Court by several members of the New Haven police department. The trial court found

The trial court found that the plaintiff's new position, although subordinate to Guidone's, involved no cut in pay and that initially his duties and responsibilities remained the same as those of his previously held position. The court determined, however, that from shortly after his appointment as commander until his termination in 1980, the plaintiff was the victim of "a long standing pattern of administrative discrimination." Testimony at trial indicated that during that period of time Paul Guidone took over most of the plaintiff's duties, until the plaintiff was left with responsibility for only one major project. "[The plaintiff] was no longer invited to attend Chief Morrone's staff meetings. His car was taken away. His parking spot was taken away. His secretary was moved from outside his office to outside Paul Guidone's office. He was ordered to report to [Guidone] rather than directly to Chief Morrone. His staff people reported to Paul Guidone rather than to him, leaving him one by one. Officers who formerly accompanied him on federally funded field trips were unable to do so because of pressing duties elsewhere." The trial court concluded that the plaintiff had "suffered a period of heavy-handed, unsubtle, administrative discrimination resulting in his virtual isolation and culminating in his termination."

On July 1, 1980, the New Haven board of finance eliminated the position of commander of planning and terminated the plaintiff's employment. Although the board claimed that the plaintiff was terminated for "budgetary reasons," the trial court found that "the elimination of the plaintiff's position for fiscal reasons was a subterfuge," designed solely to "get rid of the

that the newly created directors positions had been illegally filled in violation of the New Haven charter and the established civil service rules. It declared the appointments null and void and ordered that the positions be refilled in compliance with the applicable civil service procedures. On appeal by the defendants, we affirmed the decision of the trial court. *New Haven Police Local 530* v. *Logue,* 188 Conn. 290, 294, 449 A.2d 990 (1982).

[plaintiff]." Immediately following his termination the plaintiff obtained new employment as chief of planning for the Comprehensive Employment Training Act (CETA).

On the basis of its conclusions that the plaintiff had been wrongfully denied the appointment as director of planning, and that the commander of planning position had been unlawfully eliminated, the trial court awarded the plaintiff $18,025 in compensatory damages. The court reached this figure by subtracting the plaintiff's earnings for the period from 1978 to 1982 from Guidone's salary for the same period. The trial court additionally found the defendants liable for exemplary damages "in an amount which will compensate [the plaintiff] to the extent of his expenses of litigation, including attorney's fees, less taxable costs."

The defendants have appealed the judgment, claiming that the trial court erred (1) in its computation and award of compensatory damages, and (2) in its conclusion that the plaintiff is entitled to exemplary damages. On the cross appeal, the plaintiff claims error in the trial court's refusal to order reinstatement. We find error on the appeal and affirm the judgment on the cross appeal.

I

We are mindful, in our analysis of the claims presented in this case, of the familiar principle that "[t]his court may reverse or modify the decision of the trial court [only] if the decision is clearly erroneous in view of the evidence and pleadings in the whole record." *CEUI* v. *CSEA,* 183 Conn. 235, 251, 439 A.2d 321 (1981).

The defendant's first claim, which questions the propriety of the compensatory award, must be analyzed in two parts: pretermination compensation and post-termination compensation. The trial court found that,

since the plaintiff was wrongfully denied promotion to Guidone's position, he was entitled to be compensated in the amount of Guidone's salary for the years Guidone illegally held the position. In our view, the finding of wrongful denial of promotion is clearly erroneous.

The civil service rules and regulations for the city of New Haven provide specific procedures to be followed in filling vacancies within the service: "Vacancies in higher positions in the classified service of the City shall as far as practicable be filled by promotion from lower classes upon the basis of competitive tests including a consideration of service ratings, provided that in case no persons in the classified service meet the necessary qualifications or it is deemed to the best interests of the City, the Civil Service Board may direct that such position be filled by competitive tests open to any qualified persons." Civil Service Rules and Regulations, Rule X. The appointments made during the Morrone reorganization violated the civil service rules because they occurred without administration of any competitive exams. They were declared null and void by this court in *New Haven Police Local 530* v. *Logue,* 188 Conn. 290, 292–94, 449 A.2d 990 (1982). However, the trial court's conclusion that, but for the illegal appointment of Guidone, the plaintiff would have received the director's position is unsupported by the evidence.

The most that can be said of the plaintiff's status at the time of Guidone's appointment is that he was entitled to compete for the position of director against other similarly qualified candidates.[3] While the plaintiff's prior experience as director of planning and evaluation and his rank within the civil service system made

---

[3] This case differs from our decision in *Civil Service Commission* v. *Commission on Human Rights & Opportunities,* 195 Conn. 226, 231, 487 A.2d 201 (1985), wherein we held that an employee denied a promotion solely on the basis of age is entitled to be awarded as damages the salary he would have received if he had been appointed to the job.

him a leading candidate for Guidone's job, he was not the only candidate. At the time Guidone was hired the plaintiff had the right to compete for the promotion, and nothing more. Such a right is clearly not one upon which an award of compensatory damages can be properly based. It is our conclusion, therefore, that the trial court erred in using Guidone's salary as the figure from which to measure the plaintiff's compensatory damages. With this in mind, we proceed to an analysis of the compensatory damages award.

The purpose of compensatory damages is to restore an injured party to the position he or she would have been in if the wrong had not been committed. See 1 Minzer, Nates, Kimball, Axelrod & Goldstein, Damages in Tort Actions (1985) § 3.00; McCormick, Damages (1935) § 137. We have concluded that, during the three years preceeding his termination, the plaintiff was not entitled, as a matter of right, to be appointed director of planning. He therefore suffered no compensable injury during those years, and the trial court's award of $8125 in back pay is clearly in error.

With regard to the period following the plaintiff's termination, the trial court found that the commander's position was eliminated solely to get rid of the plaintiff, and that the manner of termination violated civil service regulations. These conclusions are substantially supported by the evidence. In order to recover post-termination compensatory damages, however, the plaintiff must show, in addition to wrongful termination, that he sustained a specific, resulting injury. To determine whether the plaintiff has suffered any post-termination damages, we compare, on a year by year basis, the plaintiff's earnings prior to termination with the salary he received in subsequent employment. See Schlei & Grossman, Employment Discrimination Law (2d Ed. 1983) p. 1445; cf. *Labor Board* v. *Seven-Up Co.,*

344 U.S. 344, 348, 73 S. Ct. 287, 97 L. Ed. 377 (1953). Any loss of earnings suffered as a result of the termination is properly compensable.

After his termination in 1980, the plaintiff obtained employment with CETA. His final salary as commander of planning was $22,400, and it is from this figure that we measure any loss of earnings suffered in subsequent years. In 1981 he earned $22,000 with CETA. He therefore suffered a compensable loss of $400 in that year. In 1982 he received $24,000 from CETA. Since the plaintiff realized a gain in salary in 1982, he is entitled to no compensatory damages for that year.

## II

The defendants' second claim is that the trial court erred in awarding the plaintiff exemplary damages. The defendants argue that the acts against the plaintiff do not rise to the level of "wilful and malicious" discrimination upon which an award of exemplary damages can be based, and that since the plaintiff offered no evidence of the cost of the litigation at trial, attorney's fees are not recoverable.

The rules in this state regarding the award of common law punitive damages are well established. " 'Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . If awarded, they are restricted to cost of litigation less taxable costs of the action being tried . . . .' *Vandersluis* v. *Weil*, 176 Conn. 353, 358–59, 407 A.2d 982 (1978)." *Alaimo* v. *Royer*, 188 Conn. 36, 42, 448 A.2d 207 (1982). "[T]he extent to which exemplary damages are to be awarded ordinarily rests in the discretion of the trier of the facts." *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn 280, 295, 472 A.2d 306 (1984).

In the present case, the trial court found that the plaintiff "suffered a period of heavy-handed, unsubtle, administrative discrimination resulting in his virtual isolation and culminating in his termination." The court also found fraud in the plaintiff's discharge from employment as commander of planning. The defendants have presented no evidence to refute these findings, and in fact stated at oral argument that they specifically were not challenging the trial court's determination that the plaintiff had been the subject of discrimination. The evidence supports a finding of reckless disregard and wilful violation of the plaintiff's rights sufficient to sustain an award of exemplary damages.

The trial court, in its memorandum of decision, awarded the plaintiff exemplary damages "in an amount which will compensate him to the extent of his expenses of litigation, including attorney's fees, less taxable costs." At trial, the court took no evidence as to the actual costs of the litigation, and no post-trial hearing in damages was ever held. Consequently, the exact monetary cost of the litigation has never been determined. The defendants claim that, because the plaintiff offered no evidence of actual attorney's fees at trial, the award of exemplary damages must be reversed. While it concededly is true that " '[n]o award for an attorney's fee may be made when the evidence is insufficient' "; *Appliances, Inc.* v. *Yost,* 186 Conn. 673, 680, 443 A.2d 486 (1982); it is equally clear that liability for attorney's fees can be placed in the absence of any evidence of the cost of the work performed. In this case the trial court found the defendants liable for exemplary damages based on sufficient evidence of discrimination. It merely failed to set the amount of the award. The proper remedy under these circumstances, and the one which we order, is that the case be remanded to the trial court for a hearing to determine the amount of exemplary damages awarded.

## III

Lastly, we address the plaintiff's claim on the cross appeal that the trial court erred in refusing to order his reinstatement. Generally, where an employee has been unlawfully terminated from employment, the remedy of reinstatement is to be applied by the court whenever possible. A court is not, however, obligated to order reinstatement where the position from which the employee was terminated no longer exists. See *Brown* v. *Colman-Cocker Co.,* 16 F.E.P. 1046, 1051 (W.D.N.C. 1975). Shortly after this court declared the Morrone appointments illegal and ordered the positions refilled in accordance with civil service regulations; see *New Haven Police Local 530* v. *Logue,* supra; the police department was again reorganized under the direction of a newly appointed chief of police. Each position for which the plaintiff might otherwise be eligible by virtue of his civil service status now carries the additional requirement that applicants be presently sworn members of the police force. Since the plaintiff is not a sworn police officer, it would be futile for this court to order his reinstatement. We therefore affirm the trial court's finding on the cross appeal.

There is error in the trial court's determination that the plaintiff is entitled to $18,025 compensatory damages, the judgment ordering the defendants to pay this amount is set aside, and the case is remanded with direction to render judgment ordering the defendants to pay the plaintiff $400 compensatory damages; there is no error in the trial court's determination that the plaintiff is entitled to exemplary damages and the case is remanded for further proceedings to determine the amount of such damages; there is no error on the cross appeal.

In this opinion SHEA, DANNEHY and SPADA, Js., concurred. O'NEILL, J., concurred in the result.