******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## BRIAN FITZGERALD ET AL. *v.* CITY OF BRIDGEPORT ET AL.
## (AC 40130)

Alvord, Prescott and Flynn, Js.

*Syllabus*

The plaintiffs sought a temporary injunction to prevent the defendants from making appointments to the position of police captain based on the results of a police captain examination. In 2008, the defendant city of Bridgeport had twenty-one lieutenant positions within its police department. In 2010, a request from the police chief for an increase to twenty-two lieutenant positions was approved, even though the city charter required the submission of such a request to the city council for approval, and A was promoted to the rank of lieutenant, as the twenty-second lieutenant. In November, 2010, the employment of B as a lieutenant was terminated, leaving twenty-one members holding the rank of lieutenant until November, 2012, when M retired, which left twenty members holding the position of lieutenant. In February, 2014, C was promoted to lieutenant, and in May, 2015, the defendant Civil Service Commission announced that it would conduct a promotional examination for the position of captain, specifying that April 22, 2012, was the date by which candidates for the captain examination were required to have occupied with tenure a position of lieutenant for not less than one year. The time that C occupied, with tenure, the position of lieutenant was calculated by the defendant D, the personnel director for the city, from the date on which C would have been appointed to lieutenant to fill the vacancy in the position held by B, which resulted in a determination in September, 2015, that C was eligible to take the captain examination. Underlying the calculation of C's seniority was the determination that the department had an authorized strength of twenty-two lieutenant positions, as no vacancy in the twenty-first lieutenant position occurred until M retired in November, 2012, and if C's seniority had been determined from that date, he would not have been eligible to sit for the examination. The captain examination was held in October, 2015, and C scored seventh. The plaintiffs thereafter brought this action, alleging that C lacked the necessary qualifications to sit for the captain examination. Specifically, they claimed that because the city council had not approved an increase in the number of lieutenant positions from twenty-one to twenty-two, C's seniority was improperly calculated on the basis of the vacancy occurring in the twenty-second lieutenant position created by the termination of B in November, 2010. After the trial court dismissed a counterclaim filed by C, the matter was tried to the court, which concluded that C did not meet the eligibility requirements for the captain examination and should not have been permitted to take the examination, and ordered C's name stricken from the promotion list. On C's appeal to this court, *held:*

1. The trial court properly dismissed C's counterclaim for lack of subject matter jurisdiction on the basis of his failure to exhaust his administrative remedies by appealing the time in grade date established in the May, 2015 announcement, as C's claim of error in the commission's selection of the date on which the vacancy in the rank of captain occurred was subject to the exhaustion requirement: although C claimed that he had no reason to appeal to the commission because he was not aggrieved by D's determination of his eligibility to take the captain's examination, C could not have been certain of his eligibility to take the captain examination from the date of the announcement in May, 2015, until after D's determination regarding C's eligibility in September, 2015, and despite that uncertainty he did not appeal to the commission the date of vacancy determination pursuant to the city charter, and the defendants had not presented this court with any reason why the date of vacancy was not the proper subject of an appeal before the commission, as the commission had the authority and expertise necessary to review that issue and to afford C the relief he sought from the court, and if C had presented to the commission his claim as to the proper date in the

vacancy in the rank of captain, he might have received a satisfactory administrative disposition of that question and avoided the need for judicial review; moreover, the policies underlying the exhaustion doctrine would be best served by requiring C to bring his challenge to the date of vacancy before the commission, as that determination was a fact bound inquiry, which the commission was uniquely qualified to undertake, and C, a municipal employee candidate for promotion to captain, clearly possessed a specific, personal and legal interest in the date establishing the candidates' eligibility for the captain examination, and that interest was adversely affected by the date selected, which was sufficient to establish aggrievement; accordingly, because C could have obtained review of the date of vacancy by way of an appeal to the commission pursuant to the city charter, he was required to do so before seeking redress in court.

2. The defendants' claim that the trial court improperly concluded that the twenty-second lieutenant position was not legally established under the city charter was unavailing, as the commission lacked the authority to increase the number of lieutenants; the plain language of the charter required that the city council establish the new lieutenant position, and the trial court properly concluded that the city council never established the twenty-second lieutenant position, as the defendants did not contest the trial court's finding that the commission never submitted its action authorizing the creation of the twenty-second position to the city council for approval, D did not submit any request or notification to the city council that the commission had approved the creation of the twenty-second lieutenant's position, and the informal recognition of an accomplished increase in the number of lieutenant positions did not satisfy the charter's mandate that the council establish any such positions.

3. The defendants could not prevail on their claim that even if the trial court properly determined that the twenty-second lieutenant position was not legally established under the charter, the court's conclusion that C was ineligible to sit for the captain examination constituted an improper sanction of an illegal appointment; although there did not appear to be a current ordinance addressing the number of positions in the department, the commission was unauthorized to fix the number of positions within the department, as the council was responsible for establishing new positions under the charter, and because the mere fact that an employee is occupying a position illegally does not permit the personnel director to consider that position vacant for purposes of determining the number of vacant positions within a class, A's position in the class of lieutenant remained filled despite the fact that his position initially had been created in violation of the city charter, and, thus, promoting C to a lieutenant position upon the vacancy created by B's termination would have constituted an illegal overfill.

Argued October 10, 2018—officially released January 22, 2019

*Procedural History*

Action for a temporary injunction to prevent, inter alia, the defendants from making appointments to the position of police captain based on the results of a police captain examination, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the defendant Manuel Cotto filed a counterclaim; thereafter, the court, *Kamp, J.*, granted the plaintiff's motion to dismiss the counterclaim; subsequently, the matter was tried to the court, *Hon. Michael Hartmere*, judge trial referee; judgment for the plaintiffs, from which the defendant Manuel Cotto appealed to this court. *Affirmed.*

*Barbara M. Schellenberg*, with whom was *Richard L. Albrecht*, for the appellant (defendant Manuel Cotto).

*Thomas W. Bucci*, for the appellees (plaintiffs).

*John P. Bohannon, Jr.*, for the appellees (named defendant et al.).

*Opinion*

ALVORD, J. The defendant Manuel Cotto[1] appeals from the judgment of the trial court dismissing his counterclaim and in favor of the plaintiffs.[2] The court struck Cotto's name from the eligibility list for promotion to police captain after concluding that Cotto had not met the eligibility requirements and should not have been allowed to take the captain examination. On appeal, Cotto claims that the court improperly (1) dismissed his counterclaim for lack of subject matter jurisdiction on the basis that he had failed to exhaust his administrative remedies, and (2) determined that a twenty-second lieutenant position was not established as required pursuant to § 206 (d) of the charter of the city of Bridgeport. He claims in the alternative that even if the trial court properly determined that the twenty-second lieutenant position was not established as required, the court's conclusion that he was ineligible to take the captain examination constituted an improper sanction of an illegal appointment. We affirm the judgment of the court.

The following facts, either found by the court or stipulated to by the parties,[3] and procedural history are relevant to this appeal. The defendant city of Bridgeport (city) is a municipal corporation and has as its governing document the charter of the city of Bridgeport (charter). Section 206 (a) (3) and (4) of the charter set forth the powers and duties of the defendant Civil Service Commission (commission), including "mak[ing] investigations, either on petition of a citizen or on its own motion, concerning the enforcement and effect of this chapter, requir[ing] observance of its provisions and the rules and regulation made thereunder," and "hear[ing] and determin[ing] complaints or appeals respecting the administrative work of the personnel department, appeals upon the allocations of positions or concerning promotions, the rejection of an applicant for admission to an examination and such other matters as may be referred to the commission by the personnel director." The personnel director for the city, defendant David J. Dunn, is responsible for formulating and holding competitive tests to determine the qualifications of persons seeking employment or promotion with the city.[4]

Section 211 of the city charter governs eligibility for promotion tests. Subsection (a) of § 211 provides in relevant part that a promotion test shall be open to those "who have held a position for a year or more in a class or rank previously declared by the commission to involve the performance of duties which tend to fit the incumbent for the performance of duty in the class or rank for which the promotion test is held. . . . A person who has served less than one year in a lower grade shall not be eligible for a promotion test." Section 211 (b) of the charter provides in relevant part that "[w]hen a position in a promotion class shall become

vacant . . . the personnel director shall, within one hundred and twenty days of the date of the creation of the vacancy, hold a promotion test for such class."

Joseph L. Gaudett, Jr., became the chief of the city's police department (department) in October, 2008.[5] At the time of Gaudett's appointment, there were twenty-one lieutenant positions within the department. A nationally recognized police think tank, the Police Executive Research Forum (PERF), recommended that the city increase the number of lieutenant positions to twenty-three. In January, 2010, Gaudett wrote to Dunn to request that the number of lieutenants in the table of organization be increased from twenty-one to twenty-two. The city's chief administrative officer, Andrew Nunn, approved Gaudett's request. Gaudett appeared on February 9, 2010, before the commission, which voted to approve Gaudett's request. A "civil service position request form," requested the creation of and funding for a twenty-second lieutenant position, and was signed by Mayor Bill Finch, Nunn, Gaudett, and Dunn.

Section 206 (d) of the charter provides that "[w]henever the appointing authority of any department desires to establish a new permanent position in the classified service, the personnel director shall make or cause to be made an investigation of the need of such position and report his findings to the commission. If upon consideration of the facts the commission determines that the work of the department cannot be properly and effectively carried on without the position, it shall classify and allocate the new position to the proper class after the position has been established by the city council. If the commission determines that the position is not necessary and that the work of the department can be properly and effectively carried on without the position, it shall promptly transmit such determination to the city council. Such determination by the commission shall be final unless the city council, within two months of the date of such disapproving action by the commission, shall by its duly enacted resolution approve the establishment of such position. In such event the final action of the city council shall be promptly transmitted to the commission and the commission shall allocate the position or positions therein approved to its proper class in the classification plan. All classifications and allocations made pursuant to this subsection shall be based on the same procedure and formula called for in subsections (a) and (b) of this Section."

The commission did not submit its action authorizing the creation of the twenty-second position to the city council for approval. Nevertheless, Sergeant Richard Azzarito was promoted to the rank of lieutenant, as the twenty-second lieutenant, in February, 2010, and remains a lieutenant. That is, beginning on March 18,

2010, there were twenty-two members of the department holding the rank of lieutenant, although there were only twenty-one lieutenant positions in the city budget.[6] The city used the reallocation of funds from a vacant emergency medical technician supervisor position to fund the twenty-second lieutenant position in 2010. On November 16, 2010, Christine Burns' employment as a lieutenant was terminated.[7] After her termination, there were twenty-one members of the department holding the rank of lieutenant until November 24, 2012, on which date lieutenant Matthew Cuminotto retired. After Cuminotto's retirement, there were twenty members of the department holding the rank of lieutenant. Since November 16, 2010, the department has never had more than twenty-one members holding the rank of lieutenant.

In November, 2013, Dunn administered a promotional examination for the class of lieutenant. Cotto, a well educated, second-generation city police officer who had served as a sergeant since March, 2008, scored first on the examination and was promoted to lieutenant on February 10, 2014.

On May 4, 2015, the commission announced that it would conduct a promotional examination for the position of captain. The announcement provided that the examination was "open to current members of the Bridgeport Police Department, who have occupied with tenure, a position of Police Lieutenant for not less than one year, prior to April 22, 2012." The captain examination was scheduled for October 21, 2015.

As previously discussed, if a position in a promotion class becomes vacant, the personnel director is required, pursuant to § 211 (b) of the charter, to hold a promotion test within 120 days of the date of vacancy in that class if there is no appropriate reemployment or employment list. Dunn did not hold an examination within 120 days of the date of vacancy in the captain class. As a result, Dunn was required, pursuant to a collective bargaining agreement between the city and the police union, to reconstruct the examination eligibility list to ensure that only those persons who satisfied the eligibility requirements on the date the test was required to be administered were permitted to take the examination.

The commission selected April 22, 2012, as the date by which candidates for the captain examination were required to have "occup[ied] with tenure, a position of Police Lieutenant for not less than one year." Dunn, considering the date that Burns' employment was terminated on November 16, 2010, calculated Cotto's time in grade as a lieutenant from the date on which Cotto would have been appointed lieutenant to fill the vacancy in the position held by Burns. Underlying Dunn's calculation of Cotto's seniority was his determination that the department had an authorized strength of twenty-

two lieutenant positions, as no vacancy in the twenty-first lieutenant position occurred until Cuminotto retired on November 24, 2012. Dunn found that Cotto possessed tenure in the rank of lieutenant from March 16, 2011, which was 120 days following November 16, 2010, the date on which Burns' employment was terminated. Thus, Dunn determined that Cotto was eligible to take the captain examination because he had occupied a position of lieutenant for not less than one year as of April 22, 2012. Dunn announced his decision to that effect on September 23, 2015. The next day, the plaintiffs appealed Dunn's decision to the commission, which denied the appeal on October 13, 2015. The captain examination was held on October 21, 2015, and Cotto scored seventh.

The plaintiffs commenced the present action alleging, inter alia, that Cotto lacked the necessary qualifications to sit for the captain examination. They alleged that because the city council had not approved an increase in the number of lieutenant positions from twenty-one to twenty-two, Dunn had improperly calculated Cotto's seniority on the basis of the vacancy occurring in the twenty-second lieutenant position created by the termination of Burns on November 16, 2010. Had Dunn properly calculated Cotto's seniority from the date of vacancy in the twenty-first position, Cotto would not have been eligible to sit for the examination. The plaintiffs sought temporary and permanent injunction and other relief.

On April 11, 2016, the city, the commission, and Dunn collectively filed an answer. That same day, Cotto individually filed an answer and counterclaim. The plaintiffs filed a motion to dismiss Cotto's counterclaim, which was granted on July 1, 2016. This action was tried to the court on September 14, 2016, and the parties filed posttrial briefs thereafter. On January 31, 2017, the court issued a memorandum of decision, in which it concluded that Cotto did not meet the eligibility requirements for the captain examination and, thus, should not have been permitted to take the examination. The court, accordingly, ordered Cotto's name stricken from the promotion list.

The court first analyzed whether the twenty-second lieutenant position had been created in conformity with the law, such that a vacancy in that position could serve as the basis for calculating Cotto's time in grade as a lieutenant. The court found that neither the commission nor Dunn had conducted an investigation of the need for such a position, as required by § 206 (d) of the charter.[8] Moreover, the court found that the city council had never established the twenty-second position and that the commission lacked authority to approve Gaudett's request to increase the number of lieutenant positions from twenty-one to twenty-two. Thus, the twenty-second lieutenant position was not properly

established, and Dunn's position that the department had an authorized strength of twenty-two lieutenant positions was incorrect. That incorrect determination led Dunn to calculate Cotto's time in grade of lieutenant from the date Burns' employment was terminated on November 16, 2010. After that date, the department was at its authorized strength of twenty-one lieutenants. Thus, the court found that no authorized lieutenant position became available until Cuminotto retired on November 24, 2012, the date from which Cotto's time in grade should have been calculated. Because Cotto had occupied the position of lieutenant for less than one year as of April 22, 2012, the court concluded that he was ineligible to sit for the captain examination and ordered his name struck from the eligibility list. Additional facts and procedural history will be set forth as necessary.

I

The defendants first claim that the trial court improperly dismissed Cotto's counterclaim on the basis of a failure to exhaust his administrative remedies. We disagree.

The following additional facts and procedural history are relevant to this claim. In Cotto's counterclaim, he alleged that April 22, 2012, the date by which candidates for the captain's examination were required to have "occup[ied] with tenure, a position of Police Lieutenant for not less than one year," was incorrectly determined. He maintained that in 2001, the city council had raised the authorized number of captain's positions from nine to thirteen. Cotto claimed that although several captain vacancies had occurred between 2001 and 2009, the chief of police failed to serve notice on the personnel director within thirty days of each vacancy as to whether he desired to fill the vacancies. Accordingly, three captain positions were alleged by Cotto to have been abolished, returning the authorized number of captain positions to nine.[9] Cotto claims that the commission and the chief of police nevertheless continued to appoint captains, one of which was James Baraja, in excess of the nine authorized positions. Baraja again was promoted, to deputy chief, on December 22, 2011. The commission considered that date as the date of the vacancy in the captain's position and identified it as such in the May 4, 2015 revised announcement that it would conduct a captain examination. According to Cotto, the Baraja captain vacancy "was a phantom vacancy" created by an unauthorized captain appointment, and the first authorized vacancy in a captain position did not occur until Captain Viadero retired on June 28, 2014. Cotto alleged that he had "over a year seniority as a lieutenant measured from the Cuminotto vacancy of November 24, 2012, plus 120 days, to the retirement of Captain Viadero, plus 120 days."

In the event the court were to render judgment for

the plaintiffs on their complaint, Cotto requested that the court then void the current promotion list and the promotions made therefrom and order the personnel director to convene a new promotional examination for the rank of captain tied to the proper vacancy dates.

On April 12, 2016, the plaintiffs filed a motion to dismiss Cotto's counterclaim on the basis that the court lacked subject matter jurisdiction over it. Specifically, they argued that Cotto failed to appeal to the commission from the decision to use the date on which Baraja was promoted to deputy chief, rather than the date Viadero retired, to assess the eligibility of the candidates for promotion to captain. Cotto's failure to appeal from that decision, according to the plaintiffs, required that his counterclaim be dismissed for failure to exhaust his administrative remedies. Cotto filed a memorandum in opposition to the plaintiffs' motion to dismiss, in which he argued that the exhaustion requirement was inapplicable because he had received a favorable ruling from Dunn that he had sufficient time in grade to take the captain's examination. Because he was determined to be eligible to take the examination, Cotto claimed that he had no reason to appeal to the commission. In their reply brief, the plaintiffs argued: "When the plaintiffs filed their appeal with the civil service commission raising Cotto's eligibility, he became fully aware that his eligibility would be jeopardized if he did not challenge the April 22, 2012, date, since he would not have the requisite one year tenure as of that date if the plaintiffs succeed in their claim. Nevertheless, he remained silent, and accepted the . . . commission's determination, exposing him to disqualification based on his eligibility being measured from his filling a nonexistent twenty-second lieutenant's position."

After considering the motion on the papers, the court issued an order granting the plaintiffs' motion to dismiss Cotto's counterclaim. It reasoned: "While Cotto's argument that he had no reason to appeal a decision in his favor is logical, the court is not aware of any Connecticut case law that supports the proposition that a favorable decision renders the exhaustion requirement not applicable. Our Supreme Court has defined exceptions to the exhaustion requirement narrowly, and the defendant's failure to appeal the time in grade date to the . . . commission is not exempted from the exhaustion requirement."

On appeal, the defendants claim that the exhaustion requirement is not applicable because Cotto was not aggrieved by Dunn's decision that he possessed the necessary time in grade to take the captain examination. They claim that the court's conclusion was based on an illogical interpretation of the appeal provision contained in § 206 (a) (4) of the charter. The plaintiffs respond that because Cotto failed to challenge the April 22, 2012 date, either by way of his own appeal to the

commission or during the plaintiffs' appeal of Dunn's decision to the commission, the court properly dismissed his counterclaim on the basis that he had failed to exhaust his administrative remedies.

We first set forth our standard of review and relevant legal principles. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiff's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Gerardi* v. *Bridgeport*, 99 Conn. App. 315, 317, 913 A.2d 1076 (2007).

"Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Internal quotation marks omitted.) Id., 317. "The exhaustion doctrine is rooted in both prudential and constitutional considerations. As our Supreme Court has explained, separation of powers principles [underlie] the exhaustion doctrine, namely, to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that *agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer.* . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Emphasis in original; internal quotation marks omitted.) *Metropolitan District* v. *Commission on Human Rights & Opportunities*, 180 Conn. App. 478, 486–87, 184 A.3d 287, cert. denied, 328 Conn. 937, 184 A.3d 267 (2018); see also *Gerardi* v. *Bridgeport*, supra, 99 Conn. App. 318 ("[t]he exhaustion doctrine reflects the legislative intent that such issues be handled in the

first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief" [internal quotation marks omitted]).

Section 206 (a) of the charter provides in relevant part: "The members of the civil service commission shall hold regular meetings at least once each month and may hold additional meetings as may be required in the proper discharge of their duties. Said commission shall . . . (4) hear and determine complaints or appeals respecting the administrative work of the personnel department, appeals upon the allocations of positions or concerning promotions, the rejection of an applicant for admission to an examination and such other matters as may be referred to the commission by the personnel director." See also *Gerardi* v. *Bridgeport*, supra, 99 Conn. App. 318 ("[t]he plain language of § 206 (a) (4) empowers the civil service commission to hear appeals, in which employees seek redress for alleged violations of the charter relating to the promotion of civil service employees").

We conclude that Cotto's claim of error in the commission's selection of the date on which the vacancy in the rank of captain occurred was subject to the exhaustion requirement.[10] On May 4, 2015, the commission issued a revised announcement regarding its intention to conduct a promotional examination for police captain. As of that date, Cotto was on notice that the commission had identified Baraja's promotion to deputy chief on December 22, 2011, as the date of the first vacancy in the captain rank. The announcement specified that April 22, 2012, was the date by which candidates for the captain examination were required to have "occup[ied] with tenure, a position of Police Lieutenant for not less than one year." Because of the city's frequent inability to hold promotional tests within 120 days of vacancies, Cotto had not been promoted to lieutenant until February, 2014, but was entitled to be credited with seniority from 120 days of the vacancy in the rank of lieutenant. Dunn did not issue his decision on Cotto's time in grade until September 23, 2015. Thus, from the May 4, 2015 announcement through Dunn's decision on September 23, 2015, Cotto could not have been certain of his eligibility to take the captain examination. Indeed, he does not allege that he had received, prior to the date of the May 4, 2015 announcement, any determination regarding his date of tenure in the rank of lieutenant. Despite this uncertainty, he did not appeal to the commission from the date of vacancy determination pursuant to § 206 (a) (4) of the charter.

Moreover, the defendants have not presented this court with any reason why the date of vacancy was not the proper subject of an appeal before the commission. To the contrary, it is clear that the commission had the authority and expertise necessary to review that issue

and afford Cotto the relief he now seeks from the court.[11] The language of the charter provides the commission with broad and wide ranging authority to "hear and determine complaints or appeals respecting the administrative work of the personnel department, appeals . . . concerning promotions . . . and such other matters as may be referred to the commission by the personnel director." Had Cotto appealed to the commission to challenge the date set forth in the May 4, 2015 announcement, the commission would have had the opportunity to decide that question pursuant to its responsibilities under the charter.

Indeed, had Cotto presented to the commission his claim that the first vacancy in the rank of captain occurred on June 28, 2014, he might have received a satisfactory administrative disposition of that question and avoided the need for judicial review. See, e.g. *Piquet* v. *Chester*, 306 Conn. 173, 187, 49 A.3d 977 (2012) ("[I]f the plaintiff had appealed to the board, and if the board had decided in the plaintiff's favor, she would not have needed to file the present action. If the board had decided the case against the plaintiff, the Superior Court would be presented with the reasons for the board's decision and would have been able to make an informed decision as to whether the board had acted arbitrarily.").

Finally, the policies underlying the exhaustion doctrine would be best served by requiring Cotto to bring his challenge to the date of vacancy before the commission. As our Supreme Court has recognized, "one purpose underlying the exhaustion doctrine is that judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 568, 821 A.2d 725 (2003). The issue of when the first vacancy occurred is a fact bound inquiry, which the commission is "uniquely qualified to undertake." Id.

Cotto argues, however, that "the appeal language contained in § 206 (a) (4) must be interpreted to mean that an appeal to the commission is required only when an adverse administrative decision has been made, thereby causing an employee to be aggrieved or harmed in some way." He contends that he was not aggrieved by Dunn's decision in his favor. We conclude that the trial court properly dismissed the counterclaim on the basis of Cotto's failure to appeal *the time in grade date established in the May 4, 2015 announcement*. The fact that Cotto did not appeal Dunn's favorable decision as to his eligibility for the captain examination, rendered on September 23, 2015, well after the May 4, 2015 announcement of the captain examination, is irrelevant.[12]

"The fundamental test for determining aggrievement encompasses a well-settled twofold determination:

[F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 154, 851 A.2d 1113 (2004).

In the present case, Cotto, a municipal employee candidate for promotion to captain, clearly possessed a specific, personal and legal interest in the date establishing the candidates' eligibility for the captain examination. See id., 155 (plaintiff "employees of a municipal department governed by the city's civil service rules and regulations, certainly are within the zone of interests that the civil service system was designed to protect, and, as such, have a legally protected interest in the subject matter of the challenged action"). As to the second aspect of aggrievement, Cotto's interest was adversely affected by the date selected. Ultimately, as he himself alleges in his counterclaim, the correct date pursuant to *Walker* v. *Jankura*, 162 Conn. 482, 294 A.2d 536 (1972),[13] "was not 120 days after the promotion of Captain Baraja but 120 days after the June 28, 2014 retirement of Captain [Viadero], by which time the defendant clearly had sufficient time in grade . . . ." If the commission had selected the date which Cotto now advocates, he would have been eligible to take the captain examination. This consequence alone is sufficient to establish aggrievement, because the decision affected an interest specific to Cotto, namely his eligibility to attain the rank of captain. See *Broadnax* v. *New Haven*, supra, 270 Conn. 158 (plaintiffs established aggrievement by showing that challenged promotional practice affected an interest specific to them, namely, their capacity to attain the rank of captain).

Significantly, the decision Cotto claims that he was not aggrieved by is the same decision he now challenges by way of his counterclaim. Until Dunn issued his decision regarding Cotto's eligibility, Cotto was aware that there was a "possibility," if not a "certainty," of direct injury, specifically, that the date chosen would preclude his eligibility. See id., 154 ("[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" [internal quotation marks omitted]). He, therefore, should have appealed that date. A decision in his favor at that juncture could have averted not only the plaintiffs' appeal to the commission of Dunn's decision on Cotto's eligibility, but also the

present action.

We conclude that the trial court properly dismissed Cotto's counterclaim on the basis that he failed to exhaust his administrative remedies. Because Cotto could have obtained review of the date of vacancy by way of an appeal to the commission, pursuant to § 206 (a) (4) of the charter, he was required to do so before seeking redress in court.

## II

### A

The defendants next claim that the trial court improperly concluded that the twenty-second lieutenant position was not established as required pursuant to § 206 (d) of the charter. Specifically, they claim that the trial court improperly determined that the position was not legally established because (1) Dunn did not make or cause to be made an investigation of the need for the position, and (2) the city council never established the twenty-second position. According to the defendants, because the court improperly determined the twenty-second lieutenant position to be illegally created, the court's calculation of Cotto's time in grade on the basis of the subsequent date that the twenty-first lieutenant position became vacant led to the improper conclusion that he was ineligible to sit for the captain examination. The plaintiffs respond that "[p]romoting Cotto to the [twenty-second] position would have been an illegal overfill" because "[t]he twenty-second lieutenant position had never been legally created pursuant to the provisions" of the charter. We agree with the plaintiffs.

We first set forth our standard of review and relevant legal principles. "As with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary." (Internal quotation marks omitted.) *Shevlin* v. *Civil Service Commission*, 148 Conn. App. 344, 354, 84 A.3d 1207 (2014). "[T]o the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, supra, 270 Conn. 161–62.

"In construing a city charter, the rules of statutory construction generally apply. . . . In arriving at the intention of the framers of the charter the whole and every part of the instrument must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws. . . .

"In addition, the present case involves the city's civil service system, and we previously have emphasized the

importance of maintaining the integrity of that system. Statutory provisions regulating appointments under civil service acts are mandatory and must be complied with strictly." (Citation omitted; internal quotation marks omitted.) Id., 161; see also *Walker* v. *Jankura*, supra, 162 Conn. 489 ("[s]tatutory provisions regulating appointments under civil service acts . . . may not be waived by a civil service commission").

"The [civil service] law provides for a complete system of procedure designed to secure appointment to public positions of those whose merit and fitness has been determined by examination, and to eliminate as far as practicable the element of partisanship and personal favoritism in making appointments. . . . A civil service statute is mandatory as to every requirement." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, supra, 270 Conn. 161. "Compliance by a civil service commission that is tantamount to substantial compliance is not sufficient where the civil service provision is mandatory, as substantial performance has no application to the performance of duty by those entrusted with the administration of the civil service law. It would open the door to abuses which the law was designed to suppress." (Internal quotation marks omitted.) *Jones* v. *Civil Service Commission*, 175 Conn. 504, 510, 400 A.2d 721 (1978). "Good faith of the parties will not validate an illegal appointment and will not be sanctioned by the courts." *Resnick* v. *Civil Service Commission*, 156 Conn. 28, 32, 238 A.2d 391 (1968).[14]

We first address the defendants' argument that the trial court improperly concluded that the city council never established the twenty-second lieutenant position. The defendants contend that the charter requires only that the city council establish a new position, but does not require explicitly that it budget such position. Given that the charter does not prescribe the manner in which the council must establish a new position, the defendants argue that the city council can establish a new position in "any way that manifested such an intent." The plaintiffs respond that "[t]he testimony presented at trial irrefutably proves that the city council never approved the creation of a twenty-second lieutenant position." Without such approval, the plaintiffs argue that the commission was not authorized to create a twenty-second lieutenant position in excess of the city council's budgeted twenty-one positions.

Our case law has long recognized that city commissions have no authority other than that delegated to them. Thus, fixing the number of authorized positions,[15] if not expressly delegated to the commission, is not within its authority. "It is well established that a city's charter is the fountainhead of municipal powers. . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . . It follows that agents of a city, including

its commissions, have no source of authority beyond the charter." (Citations omitted; internal quotation marks omitted.) *Lombardi* v. *Bridgeport*, 194 Conn. 601, 604, 483 A.2d 1092 (1984).

Our Supreme Court has stated: "The common council of Bridgeport is the governing body of the city. It can exercise all the powers of the municipality except those expressly granted to other agencies. . . . There is no express authority given to the [the civil service] commission to fix the number of officers in the city police. If such a power were to be accorded to it by implication from the language creating and empowering it to act, the result would be confusion. The commission could then control the entire operation of the police department by prescribing the extent of its service, its internal organization and its budgetary needs. If this were true of the police, it could be true of all the other departments and eventually the commission, a purely administrative agency, would take over a large part of the functions of government for the city."[16] (Citations omitted.) *Shanley* v. *Jankura*, 144 Conn. 694, 703–704, 137 A.2d 536 (1957).

"The intention of the legislative body is found in the words employed in the charter provisions, and these words are given their plain and obvious meaning." *Buonanno* v. *Merly*, 4 Conn. App. 148, 149, 493 A.2d 245 (1985). Section 206 (d) governs the procedures to be followed in the event that the chief of police, designated by Chapter 13, § 5 (4) of the charter as the appointing authority for the department, desires to establish a new permanent position in the classified service. Specifically, "[i]f upon consideration of the facts the commission determines that the work of the department cannot be properly and effectively carried on without the position, it shall classify and allocate the new position to the proper class *after the position has been established by the city council*." (Emphasis added.) Indisputably, the plain language of the charter provision requires that the city council establish the new position.

We agree with the trial court's conclusion that the city council never established the position. The trial court expressly found that the commission "never submitted its action authorizing the creation of a twenty-second position to the city council for approval." The defendants do not contest this finding, and Dunn testified that he did not submit any request or notification to the city council that the commission had approved the creation of the twenty-second lieutenant's position. Instead, the defendants direct this court's attention to the police department's 2011 fiscal year budget, which sets forth as an "[a]ccomplishment," that the number of lieutenants had been increased from twenty-one to twenty-two in accordance with PERF's recommendation.[17] This evidence, according to the defendants, was "more than sufficient . . . to show that the city coun-

cil had established the twenty-second lieutenant position as required by § 206 (d) because it was evidence that the city council recognized the position as permanent in nature rather than temporary." A review of the other listed "accomplishments," including reducing certain crimes, filling vacant positions, reconfiguring meetings to increase productivity, and establishing a greater "web presence,"[18] negates the suggestion that mere inclusion in a list of accomplishments fulfilled the charter requirement that the city council establish the position. Moreover, the same budget indicates unequivocally that there were twenty-one lieutenant positions budgeted for both fiscal years 2010 and 2011. Because we conclude that the inclusion of an accomplishment in an annual list of the department's highlighted activities does not satisfy the establishment requirement set forth in § 206 (d) of the charter, we need not decide what action is required by the council to establish a position. We note, however, that Chapter 5, § 8 of the charter provides in relevant part that "every act [of the city council] creating, altering or abolishing any agency, office or employment, or assigning or reassigning the same to departments, [or] fixing compensation . . . shall be by ordinance."[19]

We also find guidance in *Broadnax* v. *New Haven*, supra, 270 Conn. 136 n.2, 163 n.34, 168, in which our Supreme Court concluded that the practice of underfilling, whereby funds allocated for a vacant higher rank are used to pay individuals employed at a lower rank, violated the city of New Haven's ordinances and civil service rules and regulations. The New Haven Code required the board of aldermen to approve any action that creates a position not included in the budget as adopted by the board of aldermen, which budget authorized a specific number of salaried positions at each rank. Id., 164. The court concluded that the fire department's employment of "*additional* lieutenants, i.e., positions that were not listed in the budget" violated the New Haven Code by creating positions not included in the budget as adopted without receiving prior approval of the board of aldermen. (Emphasis in original.) Id. The city defendants argued that the board of aldermen was aware that the department was underfilling positions and that the board took no action to prohibit the practice. Id., 169. The court stated: "The defendants, however, have not indicated why the awareness of the board of aldermen somehow validates the practice, nor have the defendants cited any authority to support such a proposition. Even if we were to assume that the board of aldermen was, in fact, aware of the practice, the provisions at issue require *the formal approval*, as opposed to the informal acquiescence, of the board of aldermen, and it is undisputed that the defendants had not obtained such approval in the present case." (Emphasis in original.) Id.

Although distinct from the present case, *Broadnax*

reaffirms the principle that where a charter or ordinance requires *a formal* action by the city's legislative body, informal acquiescence is not sufficient. Id. In the present case, the informal recognition of an "accomplish[ed]" increase in the number of lieutenant positions cannot satisfy the charter's mandate that the council establish any such positions.

The defendants' remaining argument is that the trial court improperly concluded that the twenty-second lieutenant position was not established in conformity with the charter because Dunn did not "make or cause to be made an investigation of the need of such position and report his findings to the commission," as provided for in § 206 (d) of the charter. The defendants argue primarily that because the twenty-second lieutenant position was not a "new" position, but rather an "addition to an already created position," Dunn's reasonable interpretation that the investigation provision was not triggered should have been credited by the court.[20] We reject the defendants' argument that the twenty-second lieutenant position was not a new position such that the provisions of § 206 (d) were not triggered. The defendants have not pointed this court to any provision in the charter granting authority to the commission to increase the number of lieutenants. Following our Supreme Court's decision in *Shanley*, we conclude that the commission lacks authority to increase the number of lieutenants.[21]

B

Lastly, we address the defendants' alternative claim that even if the trial court properly determined that the twenty-second lieutenant position was not established as required, the court's conclusion that he was ineligible to sit for the captain examination constituted an improper sanction of an illegal appointment. They argue that "the trial court cannot, at the same time, reason that Azzarito's appointment was illegal and then legitimize that same appointment by counting it for the purpose of determining when a vacancy in the rank of lieutenant occurred." The plaintiffs argue that "the claim that Azzarito's promotion was not legitimate does not justify the overfilling of the lieutenant position that would have been created by making lieutenant Cotto's promotion to lieutenant retroactive to November 16, 2010."[22] The trial court addressed the defendants' argument by concluding that "[e]ven assuming that Azzarito's appointment was improper, one violation cannot justify another violation." We agree.

In *Shanley* v. *Jankura*, supra, 144 Conn. 704, our Supreme Court concluded that the civil service commission lacked authority to promote the plaintiff, a lieutenant at the time, to the position of captain. The city council had established by ordinance that there should be no more than seven police captains. Id., 698. Subsequently, the general assembly enacted a civil service

law for the city of Bridgeport, which provided for the creation of a civil service commission to administer the act. Id. Following the adoption of the Civil Service Act in 1935, the position of clerk of the department was allocated to the class of police captain. Id., 699. In 1943, when the then current clerk was appointed to superintendent, the Board of Police Commissioners, without consultation or approval from the commission, appointed James Falvey to the position of clerk. Id., 700. Falvey, however, was ineligible to hold any position within the class of captain. Id. The commission, thereafter, in response to a request from the Board of Police Commissioners, certified and appointed Thomas Cafferty to the position of relief captain. Id., 699. This action increased the number of police captains from seven to eight, in violation of the ordinance. Id.

The plaintiff claimed that because Falvey was occupying the position of clerk illegally, the position was in effect vacant, and, therefore, he was entitled to promotion to the class of captain. Id., 701. Our Supreme Court stated: "This argument presupposes that the commission can allocate a position in the police department to the class of captain and thereby require the board to fill the position with an appointee of that class even though by so doing the board would exceed by one the number of police captains fixed by ordinance." Id. The court further emphasized that there was no express authority given to the commission to set the number of officers in the department. Id., 702. Thus, "[t]he board was powerless to promote the plaintiff . . . to the position of captain and to assign him to the position of clerk of the department even if Falvey, the incumbent was holding the position unlawfully." The court continued: "Nor can the board's appointment of Cafferty as relief captain in violation of the ordinance help these plaintiffs. One violation cannot justify a second and a third." Id., 704–705.

Turning back to the matter at hand, although there does not appear to be a current ordinance addressing the number of positions in the department; see footnote 20 of this opinion; the commission remains unauthorized to fix the number of positions within the department, and the council remains responsible for establishing new positions under § 206 (d) of the charter. Under *Shanley*, the mere fact that an employee is occupying a position illegally does not permit the personnel director to consider that position vacant for purposes of determining the number of vacant positions within a class. Thus, Azzarito's position in the class of lieutenant remained filled despite the fact that his position initially had been created in violation of the charter, and promoting Cotto to a lieutenant position upon Burns' termination would have constituted an illegal overfill.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The city of Bridgeport, the Civil Service Commission of the City of Bridgeport, and David J. Dunn were also named as defendants in this action and adopted the brief of Manuel Cotto on appeal. Rebecca Garcia, Lonnie Blackwell, Stephen Shuck, and Richard Azzarito were also named as defendants in this action but did not appear before the trial court and have not participated in this appeal. We, therefore, refer in this opinion to Cotto, the city of Bridgeport, the Civil Service Commission of the City of Bridgeport, and Dunn, collectively as the defendants and individually by name where appropriate.

[2] The plaintiffs in this action are nine members of the Bridgeport Police Department who served in the position of lieutenant. They are Brian Fitzgerald, Brett Hyman, William Mayer, Albert Karpus, Steven Lougal, John Cummings, Kevin Gilleran, Mark Straubel, and Raymond Masek. Subsequent to the commencement of this action, some of the nine, including Fitzgerald, Straubel, and Lougal, were promoted to the position of captain.

[3] The parties filed a stipulation of facts in the trial court, which incorporated the stipulated facts in full into its memorandum of decision.

[4] Specifically, he has the responsibility to "provide for, formulate and hold competitive tests to determine the relative qualifications of persons who seek employment or promotion to any class of position and as a result thereof establish employment and reemployment lists for the various classes of positions . . . ." Bridgeport Charter, c. 17, § 207 (6).

[5] Gaudett served as department chief from October, 2008 through March 1, 2016.

[6] The city has never budgeted more than twenty-one lieutenant positions, either in the 2009-2010 fiscal year, or in any fiscal year thereafter.

[7] Burns grieved her termination. Ultimately, she was reinstated but demoted to the position of patrol officer.

[8] The court additionally rejected, as not supported by the evidence, Dunn's determination that, at all times relevant, there had been twenty-two lieutenant positions within the department.

[9] Cotto did not include any allegations resolving this numerical discrepancy.

[10] We note that our Supreme Court has "carved out several exceptions from the exhaustion doctrine . . . although only infrequently and only for narrowly defined purposes. . . . Such narrowly defined purposes include when recourse to the . . . remedy would be futile or inadequate. . . . A remedy is futile or inadequate if the decision maker is without authority to grant the requested relief. . . . It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." (Citations omitted; internal quotation marks omitted.) *Garcia* v. *Hartford*, 292 Conn. 334, 340, 972 A.2d 706 (2009). The defendants, describing exceptions to the exhaustion doctrine as "irrelevant," do not argue that any such exceptions apply.

[11] See, e.g. *Santora* v. *Miklus*, 199 Conn. 179, 186, 506 A.2d 549 (1986) (noting officers' appeals to Bridgeport Civil Service Commission as to date of eligibility set by commission in examination announcement).

[12] Accordingly, we find inapposite the defendants' comparison to authority standing for the proposition that a party who *prevails* in the trial court by obtaining the relief sought cannot appeal the trial court's order to the Appellate Court. See *Seymour* v. *Seymour*, 262 Conn. 107, 110, 809 A.2d 1114 (2002).

We also find *Jones* v. *Redding*, 296 Conn. 352, 363, 995 A.2d 51 (2010), distinguishable. In that case, the Workers' Compensation Commissioner determined that, although the plaintiff's agreement providing benefits under the Heart and Hypertension Act, General Statutes § 7-433c, was void ab initio, the plaintiff was entitled to benefits under the Workers' Compensation Act, General Statutes § 31-275 et seq. Thus, "the plaintiff had prevailed, and was placed in the same or better position than he was previously as a result of the decision." Id., 365. Rejecting the defendant's argument that the plaintiff had been aggrieved by *a portion* of the Commissioner's decision, the court concluded that the plaintiff was not "specially and injuriously affected by the decision" *in its totality*. Id., 366. Relying on the general proposition that "a party who has fully prevailed in the court below is not entitled to appeal from the judgment solely for the purpose of attacking as erroneous the reasons of the court or its conclusions of law," the court concluded that the plaintiff's inability to appeal because he was not aggrieved did not deprive the Compensation Review Board of jurisdiction to review the conclusions of the Workers' Compensation Commissioner (commissioner)

that were not challenged in the defendant's appeal. Id.

In *Jones*, the commissioner had issued one decision in which she "reach[ed] four legal conclusions." Id., 359. That decision was rendered, on balance, in the plaintiff's favor, in that the commissioner ordered the parties to proceed with the administration of the plaintiff's benefits, albeit under a different statute, and ordered the defendant to pay the plaintiff benefits owed to him as a result of the defendant's unilateral termination of such benefits. Id., 365.

In the present case, the decision that was favorable to Cotto was rendered on September 23, 2015. We do not suggest that Cotto was required to appeal that decision. Rather, Cotto was aggrieved by the decision rendered more than four months earlier, on May 4, 2015, when the commission announced the captain examination and its attendant eligibility requirements. Thus, *Jones*, involving a single decision containing multiple legal conclusions, does not control our analysis as to whether Cotto was aggrieved by the May 4, 2015 decision of the commission.

[13] In *Walker*, our Supreme Court affirmed the trial court's judgment declaring a promotion examination illegal and contrary to the charter of the city and the rules of the Civil Service Commission. *Walker* v. *Jankura*, supra, 162 Conn. 491. Pursuant to the charter, the personnel director was required to hold an examination for the position of police inspector within 120 days of the establishment of a vacancy for such position. Id., 485. The applicants for the examination were required to possess three years of experience as a police captain to qualify to take the examination. Id. The personnel director, however, delayed holding the examination until after the required 120 day period had passed to allow two candidates to attain the necessary three years of experience. Id., 486. The court concluded that the civil service provision of the charter was mandatory, and, thus, affirmed the trial court's decision that "the only reasonable remedy is to order that the list established as a result of the examination be vacated, the examination be held again and that the new examination be open only to candidates who possessed the requisite experience and qualifications" as of the date the examination was required to be held. Id., 487, 491.

[14] See also *Kelly* v. *New Haven*, 275 Conn. 580, 618 and n.42, 881 A.2d 978 (2005) (noting and collecting the "line of appellate cases which underscores that the authority of appointed boards must be exercised in conformity with the policy underlying a city's civil service legislation"); *New Haven Police Local 530* v. *Logue*, 188 Conn. 290, 300, 449 A.2d 990 (1982) (posts created by police chief were "promotions to positions" rather than "appointments," and where charter did not provide chief authority to appoint officers to new positions, department's "long practice of continual deviation from the civil service rules" could not "override the mandates of the charter").

[15] We note that the rules of the commission define "position" as "any office or employment, either occupied or vacant, calling for the performance of certain duties and the exercise of certain responsibilities by one individual either on a full-time or part-time basis." Bridgeport Rules of the Civil Service Commission, Rule 1. The rules define "class" as "a group of positions established under these rules sufficiently similar in respect to their duties and responsibilities, (a) that the same title may be used with clarity to designate each position allocated to the class, (b) that the same requirements as to experience, education, capacity, knowledge, ability and other qualifications should be required of the incumbents, (c) that the same tests of fitness may be used to choose qualified employees, and (d) that the same salary range can be applied with equity under the same or substantially the same employment conditions—a single position essentially different from all other positions in characteristics enumerated above may be considered as a class." Id. Cf. General Statutes § 5-196 (21) ("'[p]osition' means a group of duties and responsibilities currently assigned or designated by competent authority to require the services of one employee").

[16] We note that there has been robust litigation surrounding the commission and the city's compliance with the charter. See e.g. *Chapman* v. *Bridgeport*, Superior Court, judicial district of Fairfield, Docket No. CV-96-0331064 (August 20, 1997) (explaining that commission was mandated to abolish two lieutenant positions where police chief failed to serve notice on personnel director declaring whether he desired to fill two vacancies and finding that "the commission failed to comply with § 213 (a) [of the charter] in any fashion"); *Reyes* v. *Bridgeport*, Superior Court, judicial district of Fairfield, Docket No. CV-07-4022673 (January 24, 2013) (noting "the city's chronic failure to timely administer promotion tests in accordance with the charter and the union's numerous grievance challenges thereto"), *aff'd*, 152 Conn.

App. 528, 100 A.3d 50 (2014).

[17] The defendants also highlight the fact that Azzarito, who had been serving as the twenty-second lieutenant, was being compensated for his work as a lieutenant.

[18] The list provides in full: "(1) Accomplished a 9% reduction in part 1 Crimes, and increased solvability rates for serious crimes. (2) Reduction in worker's compensation claims through Taser implementation and Use of Force Continuum training. (3) Established random drug testing throughout the Department for 10% of the sworn population per month. (4) Filled all ranks in Patrol and Detective Bureau where vacancies existed. (5) Reorganized Table of Organization in accordance with PERF recommended 'Interim Model' (confirmed the position of the 'fourth' Deputy Chief, increased the number of lieutenants to 22). (6) Filled the position of Assistance Chief. (7) Re-configured 'Compstat' meetings to a more productive and meaningful platform. (8) Brought Board of Police Commissioner's Meetings back to the Chief's Office. (9) Re-invigorated the Young Adult Police Commissioner program through Community Outreach. Appointed 12 new Young Adult Police Commissioners. (10) Facilitated the necessary command structure to support the Special Operations Division (placed Captains and additional Sergeant to SET Team). (11) Hired 'Switzer Associates' as Recruitment Consulting Firm. (12) Supported Civil Service with the selection of testing companies and streamlined the entrance level process (CHIPS card and Police Apps.com). (13) Established a greater 'web presence' through use of social networking sights including Twitter, and Facebook. Development of new Department Website is ongoing."

[19] Chapter 5, § 8 of the charter provides: "In addition to such acts of the council as are required by the general statutes or by other provisions of this charter to be by ordinance, every act creating, altering or abolishing any agency, office or employment, or assigning or reassigning the same to departments, fixing compensation, establishing any rule or regulation for the violation of which a penalty is imposed, or placing any burden upon or limiting the use of private property, shall be by ordinance."

[20] We note that "the legal principle that requires courts to accord deference to the construction of a statute by the administrative agency charged with its enforcement . . . does not apply to the construction of a statute on an issue that has not previously been subjected to judicial scrutiny. . . . In such instances, the construction of the statute is a question of law for the court. . . . Moreover, where the judicial interpretation of a rule conflicts with the administrative interpretation, the judicial interpretation prevails." (Citations omitted.) *New Haven Firebird Society* v. *Board of Fire Commissioners*, 32 Conn. App. 585, 589–90, 630 A.2d 131, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993).

[21] Because we conclude that the position had not been established, we need not decide whether the trial court's finding that Dunn had not complied with the investigation provision was clearly erroneous, nor whether the PERF study satisfied the requirements of an investigation of the need for additional lieutenants.

[22] The plaintiffs also maintain that the defendants failed to raise this claim before the trial court. The city, however, raised this argument clearly in its posttrial briefing, and the plaintiffs responded fully. Further, the trial court addressed it in its memorandum of decision.